JOSIAH S. CUMMINGS & another *vs.* ALONZO W. PERRY.

Suffolk.   December 11, 1896. — September 10, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Landlord and Tenant — Implied Grant of Right to use Elevator.*

A. became the lessee of a basement room in a building which was entered from
the street by doors and steps, and was separated by a brick partition from the
engine room, which had an elevator well in the corner next to the sidewalk,
and was entered therefrom by a door and steps.   In accordance with a pro-
vision in the lease, a door was cut through the partition.   The lease also pro-
vided that A. was to have the use of the elevator for bringing his goods from
the chambers of an adjoining estate, which he was expecting to occupy, to the
basement.   When this lease expired, a new lease was made to A. of the base-
ment room, " also, with one horse power only," (which referred to the ele-
vator,) " rooms numbered 29 and 30 in said building."   A. occupied those rooms,
which were in the upper part of the building, for the purpose of manufacturing
his goods, which were lowered by the elevator to the engine room, and thence
carried across to the basement room.   The tenancy of rooms 29 and 30 was
terminated under a provision in the lease, and after that the lessor prevented A.
from using the elevator.   *Held*, in an action therefor, that there was no implied
grant of a right in A. to use the elevator for hoisting goods from the basement
room to the sidewalk and lowering them from the sidewalk to the basement
room.

CONTRACT, for breach of an implied covenant in a lease of
certain premises in Boston.   At the trial in the Superior Court,
before *Bond,* J., the jury returned a verdict for the plaintiffs;
and the defendant alleged exceptions.   The facts appear in the
opinion.

The case was argued at the bar in December, 1896, and after-
wards was submitted on briefs to all the justices.

*A. Hemenway,* (*W. A. Knowlton* with him,) for the defendant.

*R. M. Morse,* (*D. F. Kimball & L. Bass, Jr.* with him,) for the
plaintiffs.

FIELD, C. J.   The exceptions do not describe the basement
room and the means of access to it from the street with exact-
ness, but from the explanations made at the argument and the
rough plan exhibited we think we are able to understand the
case.   As the building was originally constructed it was plainly
not intended that the elevator should be used for hoisting goods

from the basement room to the sidewalk of the street, or for lowering goods from the sidewalk to the basement room. The basement room was entered from the street by doors and steps in front of the building, and was lighted by windows from the street, as the height of the basement room extended several feet above the level of the sidewalk. In one corner of the basement had been built a boiler and engine room with an elevator well, and this room had been separated from the basement room by a solid brick partition. This engine and boiler room was entered from the sidewalk by a door and steps, and the elevator well was in the corner of this room next to the sidewalk. There was also a door opening from the sidewalk by which goods could be placed on the elevator. By neither of these doors was there originally any communication with the basement room. The original construction of the building indicated that all goods must be carried into the basement room from the street, and be carried from the basement room to the street by means of the flight of steps and the doors in the front of the building on the street, and that the elevator was to be used for the stores above the basement in connection with the sidewalk, where a door to the elevator was placed.

Cummings and Thrope first entered into occupation of the basement room on January 1, 1884, under a lease from J. Franklin Faxon, Elms, and others, for four years from January 1, 1884. This lease was dated April 3, 1883, and by it the lessors " do hereby lease unto the said Cummings and Thrope the basement room of the building known as Church Green, situated on the corner of Summer and Bedford Streets, in the city of Boston, now occupied by the Shoe and Leather Association, and [*sic*] to make the necessary connection in said room with the freight elevator now in said building, and to furnish, free of charge, the use of the same to the said lessees for the purpose of bringing their finished goods from the two upper chambers of the adjoining estate, which they are expecting to occupy for manufacturing purposes, to said basement through the connection which is already made between said elevator and said chambers, making no new openings or connections." There follows a provision that the lessees, before they take possession, shall deposit with the lessors bonds or other securities satisfactory to the lessors,

to the amount of $2,000, as security for the payment of the rent, etc., and then occurs the following clause: "The opening from said premises to the said elevator to be made as soon as said Cummings and Thrope shall comply with the above conditions and occupy said premises."

The exceptions recite that "a door was cut, at the time of commencement of this lease, through said brick partition from said basement into the engine room, so that access might be had from said basement to said elevator by going through said doorway in said brick partition, then through and across the engine room to the further corner thereof, where the elevator was situated," etc. The exceptions continually refer to the lessees under this lease as the plaintiffs in the action, but the lessees under this lease are Josiah Cummings and Walter Thrope, who sign the lease individually and as Cummings and Thrope, while the plaintiffs are Josiah Cummings and Edward J. Cummings, partners under the name of Josiah Cummings and Company, who are the lessees in the lease from the Boston Real Estate Trust, hereinafter mentioned. We infer that one firm was the successor to the other, and that the change in the firm was made some time during the continuance of the first lease. For convenience, we shall follow the language of the exceptions, and shall consider the plaintiffs as occupying under both the first and second leases, which is perhaps as favorable a view to the plaintiffs as can be taken.

On December 28, 1887, the plaintiffs, Josiah Cummings and Edward J. Cummings, partners as aforesaid, as lessees executed a lease with the trustees of the Boston Real Estate Trust, to whom Faxon and others had conveyed the whole estate in September or October, 1886. By this lease there was demised and let to said lessees "the basement room of the building known as Church Green, at the corner of Summer and Bedford Streets, in said Boston; also, with one horse power only, rooms numbered 29 and 30 in said building. The lessors reserve the right to terminate this lease as to said rooms 29 and 30 on the first day of January, A. D. 1890, by giving the lessees sixty days' notice in writing; in case of such termination, the rent from and after January 1, 1890, shall be for the remainder of the premises four thousand two hundred and fifty dollars yearly. The

lessors also reserve the right to enlarge the boiler room in the rear, in which case they shall first give the lessees sixty days' notice in writing."

The Boston Real Estate Trust assigned this lease to the defendant on March 1, 1888, and thereafter the defendant collected the rents " and stood in the place of the lessors."

The exceptions recite as follows : " From January 1, 1884, to December 31, 1887, these plaintiffs occupied upper chambers of an adjoining estate, called the Sprague estate, for the purpose of manufacturing their goods; a passageway was cut through the partition wall into the Church Green building to enable the plaintiffs to load their merchandise from these upper rooms on to the elevator, so they might have it lowered to the engine room, thence across the engine room to the basement named in the lease. From January 1, 1888, to January 1, 1890, in addition to a portion of the said upper chambers, the plaintiffs occupied rooms 29 and 30, which were in the upper part of Church Green building, on a floor adjoining said upper chambers in said adjoining estate. These were also used for manufacturing goods which were transferred to the basement, by means of said elevator, for sale. The plaintiffs testified that during the continuance of the lease expiring December 31, 1887, (Exhibit B,) and also during the continuance of the lease commencing January 1, 1888, (Exhibit A,) up to January 1, 1890, the plaintiffs used said elevator for the purpose of shipping from the basement all goods they handled. There was no evidence that this defendant, or any prior lessors, knew of or assented to this latter use of the elevator, unless it be contained in the following testimony, that of E. J. Cummings, plaintiff, who testified that under the old lease the use of the elevator in connection with the basement was continuous, and that it was used by the tenants throughout the building generally, and that the owners, the Trust Company, told the plaintiff that the elevator was for the use of the tenant. J. Cummings testified that the elevator was used with the basement, and the arch cut out for such use by the lessor Elms, and so continued to be used until December 24, 1889."

It is conceded on both sides that the words " with one horse power only," found in the last lease, relate to the elevator, and

were intended to define the amount of power which the lessors agreed with the lessees to furnish in running the elevator. It is manifest that this agreement is connected with the letting of rooms numbered 29 and 30 in the building. In neither of the leases is there any express agreement for the use of the elevator in lowering goods from the sidewalk to the basement room, or in hoisting them from the basement room to the sidewalk. We infer that at some time, probably after the termination of the tenancy of the rooms 29 and 30 on January 1, 1890, the defendant prevented the plaintiffs from using the elevator to lower goods from or to hoist them to the sidewalk, or from using the elevator in any manner. This is the principal cause of action declared on, and the exceptions imply that there was some evidence of it, and although this is not so distinctly stated as it should have been, we understand that it is conceded.

The principal question in the case is whether the plaintiffs had any right to use the elevator for hoisting goods from the basement room up to the sidewalk, or for lowering them from the sidewalk to the basement room, as incidental or appurtenant to their estate in the basement room under the last lease. This claim of the plaintiffs is stated in the charge of the presiding justice as follows: " In the first place, with reference to the right of the plaintiffs to make this use of the elevator and the approach to it from the basement, in connection with the business of the basement, that is, to take goods from the sidewalk into the basement, and from the basement out on to the sidewalk, this right is not given by any express words in the lease. The lease is silent with reference to that. It merely leases the rooms, the basement and the two rooms above, so that the plaintiffs do not claim to have acquired this right to this approach and to the elevator by any express words in the lease ; but they claim that it is given in the lease by virtue of the situation of the premises, and the use that had been and was made of them, the construction of the premises, and the design as to the use of the elevator in connection with the basement by the owner of the building. That by reason of the circumstances, the situation and adaptation of the building, and the use that is made of it, this right to use the elevator passed to them as an incident to the use of the basement for their purposes; or, to use a technical word, as an appurtenance,

that is, something incidental to and connected with the principal thing, which was the use of the basement, one of the conveniences for the enjoyment of the basement which he had hired."

The presiding justice instructed the jury, among other things, as follows: "Now, having considered the facts with reference to these different matters that I have called your attention to, I will instruct you, that if the elevator and approach thereto were constructed and designed by the owner of said building to be used in connection with said basement, and the other parts of said building, for the purposes claimed by the plaintiffs; and the elevator and approach were used by the plaintiffs for the purposes claimed by them in connection with the basement, in carrying on business therein, with the knowledge of the lessors at the time of their lease to the plaintiffs, commencing January 1, 1888, and if from the date of said lease to the time of its assignment to the defendant, the elevator and approach were used by the plaintiffs for the purposes now claimed by the plaintiffs, in carrying on their business in said basement, with the knowledge and consent of said lessors, as a privilege belonging to the plaintiffs as the lessees of the basement, then the defendant would not have the right, upon becoming the assignee of the lease, to prevent the use and enjoyment of that privilege, the use of the approach, and the use of the elevator; and if he did prevent the use of it by the plaintiffs, he would be liable to pay any damage which they sustained by reason of that prevention."

This court has held the doctrine of implied grants with a good deal of strictness. *Buss* v. *Dyer*, 125 Mass. 287. *Randall* v. *McLaughlin*, 10 Allen, 366. *Lowell* v. *Strahan*, 145 Mass. 1. *Johnson* v. *Knapp*, 150 Mass. 267. *Case* v. *Minot*, 158 Mass. 577. It is true that, when a person hires a room in a building, a right to use the apparent means of access and exit often passes as appurtenant to the premises hired. In modern buildings of great height this doctrine we assume may be applied to elevators. Whether an active duty to maintain an elevator for the use of tenants can be implied may be open to question, but if an elevator is in fact maintained by the landlord, the duty to permit tenants to use it, we assume, may be implied if this is reasonably necessary for the beneficial occupation of the rooms let,

and if from the construction of the elevator and of the passage-
ways it is apparent that the elevator was intended for the use of
the tenants. But in the present case it is apparent that the
elevator was not intended originally to be used by the occupants
of the basement room; that although it might have been con-
venient for them to use it in connection with the sidewalk, yet
suitable means of ingress and egress had been furnished by
the steps and doors from the basement room into the street;
that at no time was there any access to the elevator directly
from the basement room; that the elevator did not adjoin the
basement room, and the way through the engine and boiler
room to the elevator from the basement room was not a common
passageway, but that for the purpose of connecting the base-
ment room with certain rooms in the upper part of the building
or of the adjoining building, access to the elevator from the
basement room by a way through the engine and boiler room
had been provided; that this was originally done " for the pur-
pose of bringing their finished goods from the two upper cham-
bers of the adjoining estate, which they are expecting to occupy
for manufacturing purposes, to said basement"; and that the
only reference to the elevator contained in the last lease is in
connection with the tenancy of the rooms 29 and 30 in the
building. Under these circumstances a majority of the court
think that the grant of a right to use the elevator for the
purpose of hoisting goods from the basement room to the side-
walk, and of lowering them from the sidewalk to the basement
room, cannot be implied. The fact, if it be one, that the de-
fendant or his predecessors in title permitted the plaintiffs to
make such a use of the elevator under the circumstances stated
cannot establish the right. The express agreements concerning
the elevator contained in the leases tend to negative the right to
such a use of it, and the history of the opening into the engine
room and of the use of a way across it to the elevator repels any
implication of the right to use the elevator for all purposes for
which it might be convenient to use it in connection with the
basement room. In the opinion of a majority of the court, upon
all the evidence recited in the exceptions, which purports to be
all the evidence material to this issue, the presiding justice
should have ruled, as requested by the defendant, that the plain-

tiffs showed no right to use the elevator after their tenancy of rooms 29 and 30 had been terminated, and no right to use it at any time for the purpose of hoisting goods to the sidewalk from the basement room, or of lowering them from the sidewalk to the basement room. *Exceptions sustained.*