(No. 14063.—Decree affirmed.)

KNUT O. FOSSUM *et al.* Appellees, *vs.* HENRY STARK *et al.* Appellants.

*Opinion filed February 22, 1922.*

1. EASEMENTS—*what use of a passageway is properly excluded from decree for implied easement.* A decree for an implied easement for a passageway between two houses properly excludes the use of the passageway for receiving coal, where each house is constructed so as to receive coal through coal-holes or chutes located in front of each building and there is no proof of any user of the passageway for receiving coal.

2. SAME—*necessity required to establish easement by implication need not be absolute.* To establish an easement by implication there must have been a use so long continued before separation of the title and so obvious as to show that it was meant to be permanent, and while the use must be reasonably necessary to the enjoyment of the estate the necessity need not be absolute.

3. SAME—*when easement for a passageway arises by implication.* Where the owner of two adjoining lots builds two houses with a party wall on the lot line and constructs for common use of both a passageway along the party wall and under the first floor of one of the houses as the only means of access from the sidewalk to the rear of the lots, and where the subsequent purchasers, after separation of the title, continue to use the passageway, an easement co-extensive with the common use will arise by implication.

4. SAME—*what is sufficient proof of common source of title to establish easement for passageway.* In a suit to enjoin the obstruction of an easement for a passageway between two buildings constructed on adjoining lots, sufficient proof of common source of title to the two lots is made where neither of the parties is shown to have any other source or claim of title except through the person who was in possession of and constructed the buildings on both lots and who made the deeds separating the title.

APPEAL from the Circuit Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding.

HARRY BROWN, (LEMUEL M. ACKLEY, of counsel,) for appellants.

ANDREW HUMMELAND, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Knut O. Fossum and Zuleima O. Fossum, his wife, appellees, filed their bill in the circuit court of Cook county against L. Bertha Stark and Charles E. Nixon to enjoin them from obstructing a passageway in the basement on the north side of the south building of two buildings owned by the parties. L. Bertha Stark died before the hearing on the bill, and her husband and heirs, Henry Stark, Edward V. Stark and Henry Stark, Jr., were substituted by a supplemental bill. The cause was referred to a master in chancery to take proofs and to make findings. The master found the facts in all respects as set forth in the bill and recommended that a decree be entered as prayed. Objections were filed to the master's report, which were overruled and stood as exceptions before the court. The exceptions were all overruled except in one particular, and the court entered a decree enjoining the obstruction of the passageway.

The facts alleged, admitted and proved are the following: Appellees, Knut O. and Zuleima O. Fossum, as joint tenants, are the owners in fee and in possession of the lot known as 1732 North Clark street, in Chicago, herein referred to as the north lot, and were such owners and in possession at the time of filing the bill, July 3, 1920. Appellant Charles E. Nixon is the owner of the legal title to the lot known as 1730 North Clark street, being the premises immediately south of and adjoining said north lot, and which is hereinafter referred to as the south lot, such ownership and title being subject to a certain contract of sale

between Nixon and L. Bertha Stark bearing date April 24, 1920. L. Bertha Stark and Henry Stark, her husband, entered into possession of the south lot pursuant to said contract of sale, and she thereafter died, leaving her husband and Edward V. and Henry Stark, Jr., her sons, as her only heirs, all three of whom were in possession of the premises at the filing of this bill and are also appellants in this case. Samuel E. Barrett in the year 1886 was the sole owner of both the south lot and the north lot, and in that year erected two closely connected three-story brick dwelling houses, one upon the north lot and the other upon the south lot. In the construction of the buildings a common wall was erected on the line dividing the north lot and the south lot, the center of the wall being the dividing line, the same being a party wall. The lots front on North Clark street and there is no alley in the rear of the lots. To afford access to the rear without passing through the houses and the front entrances thereof, there was constructed in the basement a passageway running from the front walls of the two buildings the entire length of the party wall on the north part of the south lot and just south of the party wall, which passageway is of the width of four feet and under the first floor of the building on the south lot. The passageway leads to an open and wider space in the rear of the partition wall on a level with the basement floor, from which wider space joint steps lead to the rear of the lots, about one-half of which steps and one-half of which space are located on the north lot and the other half on the south lot. The passageway is reached from Clark street by means of stairs from the sidewalk down to the level of the basement floor. There is an iron door at the bottom of the stairway and a frame door in line with the outer wall of the building, used as entrances. There is also a door about five feet east of the west end of the partition wall used as an exit. All of the doors have since the building was constructed been kept unlocked for ready ingress

and egress by the occupants of both buildings, for the pur-
pose of delivering milk, ice, groceries and other merchan-
dise, and for the removal of ashes and garbage. In the
east end of the basement on the north lot there was built
a room or closet for the deposit of ashes and garbage by
the occupants of both buildings. There is no entrance to
the garbage room from the north lot; and the only entrance
thereto is by means of a door constructed in the partition
wall near the east end thereof for the common use of the
occupants of both buildings. At the time the buildings were
erected there was placed in the partition wall, about twenty
feet west of the east end thereof, another door leading from
the passageway to the basement of the building on the north
lot. A door was also constructed in the south wall of the
passageway, leading to the basement of the south building
at a point opposite the door leading to the basement of the
north building. The gutters and down-spouts on the build-
ings were so constructed as to deposit the rain water from
both roofs upon the north lot. The passageway and the
structures connected therewith were made and adapted for
the joint and equal use, benefit and enjoyment by the oc-
cupants of both buildings and were of a continuous and
obvious character, and have been used and enjoyed by the
occupants from the time the buildings were constructed
until the same were obstructed and closed as hereinafter
stated. The buildings were constructed almost alike in re-
spect to internal arrangement. They have the same floor
level and arrangement of rooms, and the means of access
to the rear and to the basement of the north building by
means of the passageway and to the garbage room are rea-
sonably necessary to the beneficial use of the north build-
ing, and such means of access are obvious and apparent.

On December 5, 1888, Barrett, the owner of both the
buildings and structures aforesaid, by separate deeds, both
bearing said last date, conveyed the north lot to William
Penn Nixon and the south lot to Oliver W. Nixon. From

the latter grantee Charles E. Nixon obtained his title to the south lot. Appellees acquired their title to the north lot by *mesne* conveyances from William Penn Nixon on May 13, 1912, and since that time have had the unobstructed use of the passageway for the delivery to them in the rear of the building of milk, ice and other merchandise and for the removal of ashes and garbage, and since that time the entrance and exit of the passageway were at all times kept unlocked and unobstructed for the free, equal and common use of the occupants of the buildings. The doors leading from the passageway into the basement of appellees' building have at all times been unobstructed until closed by appellants, and appellees and their tenants have since no other way of reaching the rear of their building for the purposes aforesaid except by passing through the front hall and the living and dining room and kitchen on the main floor thereof and no other means of reaching and using the garbage room aforesaid. On or about May 1, 1920, L. Bertha Stark took possession of the south building under her contract of purchase with Charles E. Nixon, and on June 15, 1920, she, against the protests of appellees and with full knowledge and notice of their rights, closed the passageway by placing locks on the doors at the entrance and exit and has kept the same locked and obstructed except at such times as the same were used by her. She has, as have also the other appellants, denied the right of appellees and their tenants to use this passageway, and have threatened to build over, obstruct or tear down the steps leading from the sidewalk in front of the south lot to the passageway and the areaway in front of the entrance door to the passageway and to further obstruct the passageway and doors; that appellees are suffering irreparable damage by reason of said acts, and that a reasonable use and enjoyment of their premises are materially injured and impaired as aforesaid.

The proof shows the two houses were originally built by the common owner, Barrett, in 1886, for the use of the

two Nixon brothers and their families, to whom he deeded the lots in 1888; that the buildings were built according to the plans and suggestions of the wives of the two Nixons, and with a view of having a common use and enjoyment of the passageway for the purposes aforesaid; that the Nixons occupied the buildings from the time they were built until they were deeded to them, in 1888, and during all that time, and thereafter until they sold the same, used and occupied the premises and the passageway in the manner and for the purposes already stated. By way of further explanation it may be stated that the two lots in question are each twenty-two feet wide and the two stone-front buildings occupy the entire width of the lots and overlook Lincoln Park. There is a single ornamental recessed porch over both front doors, and a single flight of stone steps leads up about five feet to both front doors with no dividing rail on the steps, half of which are on each lot. The entrance leading down to the passageway in the basement is situated in the south angle which the stone steps make with the south building. On the first floor there is a large opening or door in the division wall between the two houses, by the opening of which the two floors can be thrown together for the purposes of entertainment. Each house is heated with a coal-burning furnace in its basement. The two opposite doors in the passageway open into the furnace rooms, so that ashes from each furnace can be brought through the passageway to the garbage room. Each house has separate provision made for coal supplies through a coal-hole on the Clark street front, by which coal can be shot on a slant into the space below. The front doors are thirty inches apart. There seem to be about fourteen rooms in each house, and the houses were constructed so alike throughout that they are referred to by appellants as twin buildings. Each house was clearly designed as the luxurious home for a single family, and the structures about which the controversies in this lawsuit arise were evidently intended for the common

use and convenience of the occupants of both houses. So far as the evidence shows, no effort has ever been made since the Nixons removed from the premises, by any person or persons, to avail themselves of the easement or privilege of opening the wooden folding door in the division wall of the first floor, although the door is still there.

It is apparent from the facts already stated and about which there is little dispute, that appellees are entitled to the equitable relief decreed by the court. The decree enjoins the closing of the passageway or from interfering in any way with its use by the occupants of the north lot, except that they may keep it locked from 6 P. M. to 6 A. M., and it specifies the uses to which the passageway may be put by the occupants of the north lot as the "delivery of milk, ice, groceries and other merchandise thereto and the removal of ashes and garbage therefrom." The master in chancery included in his recommendation the further privilege to the occupants of the north lot of receiving coal through this passageway. The court very properly excluded this last named privilege from its decree, for the reason that the houses are shown to have been constructed so as to receive coal through coal-holes and chutes located in the front of the building, and for the further reason that the evidence does not show that any of the occupants of the north building claimed such a privilege until recently, when coal was occasionally delivered in sacks. It is so apparent that no easement of this character was ever intended by the original owner of the two lots and that such an easement or privilege has never been established by user or otherwise, that no further consideration of the cross-errors of appellees assigned on this record, to the effect that the court erred in excluding this last named privilege from the decree, is required.

The easements contended for by appellees in this case and to which they claim a right are known to the law as easements by implication. "The general rule is, that where

during the unity of title an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use and is reasonably necessary for the fair enjoyment of the other, then upon a severance of such ownership there arises by implication of law a grant of the right to continue such use," where such grant is not reserved or specified in the deed. (9 R. C. L. 755.) It is further said by the same authority that "three things are regarded as essential. to create an easement by implication on the severance of the unity of ownership on an estate: First, a separation of the title; second, that before the separation takes place, the use which gives rise to the easement shall have been so long continued and so obvious or manifest as to show that it was meant to be permanent; and third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained. To these another essential is sometimes added,—that the servitude shall be continuous and self-acting, as distinguished from discontinuous and used only from time to time." (Ibid. 757.) It is further stated that all the authorities are agreed that such a right "is confined to cases of servitudes of a permanent nature, notorious or plainly visible, from the character of which it may be presumed that the owner was desirous of their preservation as servitudes, evidently necessary to the convenient enjoyment of the property to which they belong and not for the purposes of mere pleasure." (Ibid. 760.) It is further recognized by the same authority that "there is a conflict with regard to the degree of necessity required. In some jurisdictions easements will be implied only when the necessity for them is strict, while in others,—and this is the prevailing rule of the modern cases,—the necessity required in order to pass an easement by implication is a reasonable, not an absolute, one." (Ibid. 763, where a long list of authorities under both rules is given in the notes thereunder.) The Illinois cases fall under the latter rule. (*Jar-*

*vis* v. *Seele Milling Co.* 173 Ill. 192; *Powers* v. *Heffernan,* 233 id. 597; *Hankins* v. *Hendricks,* 247 id. 517; *Martin* v. *Murphy,* 221 id. 632.) In the case of *Hankins* v. *Hendricks, supra,* the rule is stated in this language: "It is not necessary that the easement claimed by the grantee be absolutely necessary for the enjoyment of the estate granted, but it is sufficient that it is highly convenient and beneficial thereto."

In this case the easements were enjoyed by the Nixons while they were in possession under the common owner, Barrett, and the houses were constructed, at the request of the wives of the Nixons, with the view that each occupant of the buildings could use and enjoy the passageway in the manner already stated. They thus continued to use the property until the common ownership was severed by the making of two separate deeds to the Nixons on the same day, and each continued to enjoy the easement on the property of the other as long as they continued to live there. There can be no question that these two grantees took the property with the full understanding of the existing easements, which structures had been constructed by the common owner and with the intention that each lot should be burdened with the easements aforesaid. His intention was to construct the buildings to suit the pleasure and desire of the Nixons. The plans, purposes and uses of the passageway were conceived by the Nixons themselves, and their intentions became Barrett's intentions while the structures were being made, and his intentions continued to be their intentions so long as they occupied the premises, whether as tenants or purchasers. No one can view these premises with an understanding of the situation regarding the dividing line between the two lots, the situation of the party wall, the passageway and structures connected therewith, and fail to understand and know their object and purpose and that they were permanent structures and intended to create easements on each lot in favor of the occupants of

the other. The north lot is burdened with all the water that runs off of the roofs of both buildings and also with the garbage room, which burdens were existing easements in favor of the owners of the south lot. The passageway, with the various uses for which it was intended and used, is a burden upon the south lot, but a corresponding easement was created thereby in favor of the north lot. Neither owner can deny the other the easements thus created and. which continue in favor of the other. It is very apparent that the burdens imposed on the south lot as well as those on the north lot have become much greater and more disagreeable upon both appellants and appellees than they were when borne by former occupants, and by reason of the fact, as suggested by appellants, that appellants are Germans and appellees are Swedes and do not speak when they meet. But these facts do not change the law or the right of the parties to the use of the premises.

The contention of appellants that there is no competent evidence in the record tending to prove common ownership of the two lots by Samuel E. Barrett cannot be sustained under any theory. The proof shows that he was in possession of the two lots when he built the houses and when he made deeds of the two lots to the Nixons and was the common source of title of both appellants and appellees, and neither of them is shown to have any other source or claim of title except through Barrett as the common source of title. This is sufficient proof of title. (*Smith* v. *Laatsch*, 114 Ill. 271; *Glanz* v. *Ziabek*, 233 id. 22.) Besides, appellants recognized Barrett as owner by referring to him as the owner of the lots in their exceptions to the master's report. Appellees' title was also established to the north lot by showing a regular connected chain of title by *mesne* conveyances from Barrett to them.

The decree of the circuit court is affirmed.

*Decree affirmed.*