676 P.2d 6

Alfred **KOESTEL** and Lucille I. Koestel, husband and wife, Plaintiffs/Appellees,

v.

**BUENA VISTA PUBLIC SERVICE COR-PORATION**, an Arizona corporation; Stewart Title and Trust Company, as Trustee under No. 0261; Carl A. Reinhard and Emmaline L. Reinhard, husband and wife, and the marital community composed thereof; and Ralph James Snyder, Jr., Defendants/Appellants.

**No. 2 CA–CIV 4902.**

Court of Appeals of Arizona, Division 2.

Jan. 19, 1984.

Muriel J. Smith, Nogales, for plaintiffs/appellees.

Hayes, Busby & McCracken, P.C. by James G. Busby and Catherine M. McCracken, Tucson, for defendants/appellants.

## OPINION

HOWARD, Judge.

This is an appeal from the granting of a summary judgment in a quiet title action wherein the plaintiffs allege that they had an implied easement across land being held in trust by Stewart Title and Trust Company. Since there remain unresolved issues of material fact we reverse and remand for further proceedings.

## THE FACTS

In 1958 Desert Diet, a corporation, acquired an undivided parcel of land in Santa Cruz County which was part of what was known as the Buena Vista Land Grant. The next year Desert Diet subdivided part of the land, creating a subdivision known as Howard Inches Ranch Club Estates. This subdivision included two large lots, Lot 297 and Lot 298. Also, in 1959 Desert Diet piped water from wells located on Lot 298 to a model home located on Lot 23 of the Howard Inches Ranch Club Estates.

The next relevant event occurred in 1961 when the Arizona Corporation Commission issued a certificate of convenience and necessity to Howard Inches Water Company to supply water to the land acquired by Desert Diet. In 1962 Koestel came to Santa Cruz County to buy Lot 298 of Howard Inches Ranch Club Estates. Prior to purchasing the lot, he inspected Lots 298, 297 and a foreman's house which was located on Lot 297. He observed that water from a well on Lot 298 was piped to Lot 297 and across 297 to the foreman's house. On November 15, 1962, Koestel bought Lot 298 together with five other lots which are not involved here.

On April 18, 1963, a portion of Lot 297 of Howard Inches Ranch Club Estates was resubdivided into a subdivision known as Spa Estates. The foreman's house was located on Lots 34 and 35 of Spa Estates. Thereafter, the water situation was this. Water from the well on Lot 298 went by pipe to Lot 297 and from 297 the pipe went under a road to Lots 34 and 35 of Spa Estates.

Subsequently, Howard Inches, who was the president of Desert Diet, needed to borrow some money. Koestel arranged for a group of investors to lend the money and a trust was created with Stewart Title and Trust Company, Trust No. 0237 as the mortgagee. Koestel eventually became the sole beneficiary of the trust. Desert Diet mortgaged three lots, including 34 and 35 of Spa Estates, on July 15, 1963.

After Desert Diet defaulted on its payments under the mortgage, Trust 0237 sued to foreclose. It received a sheriff's certificate of sale on May 12, 1965.

On June 30, 1965, Koestel leased to Stewart Title and Trust, as trustee under Trust No. 0261 a well located on Lot 298 for a 15-year period. Under this lease Trust No. 0261 agreed to furnish water for a garden plot on Lot 298 and furnish water to Koestel's proposed residence either on Lots 34 and 35 of Spa Estates or on one of the other lots that he previously purchased in Howard Inches Ranch Estates.

Desert Diet, which had in the meantime filed bankruptcy, did not redeem the property and on November 12, 1965, Trust 0237 received a sheriff's deed to Lots 34 and 35. On February 10, 1966, Trust 0237 conveyed Lots 34 and 35 to Koestel.

On August 20, 1967, Koestel filed a claim in the Desert Diet bankruptcy contending a deficiency due from the sheriff's sale of Lots 34 and 35.

Subsequent events include the following: Buena Vista Public Service Corporation took over the assets of Howard Inches Water Company on August 22, 1968, and on October 4, 1968, the Arizona Corporation Commission revoked the certificate of convenience and necessity of Howard Inches Water Company.

In 1973 the trustee in bankruptcy conveyed the properties of Desert Diet, including Lot 297, to Stewart Title and Trust.

## THE LAW

■ Arizona recognizes that one may acquire an interest in land by means of an implied easement. In *Porter v. Griffith,* 25 Ariz.App. 300, 543 P.2d 138 (1975) the court set forth the essential elements of an implied easement and the theory on which such an easement is based. The elements are:

"(1) The existence of a single tract of land so arranged that one portion of it derives a benefit from the other, the division thereof by a single owner into two or more parcels, and the separation of title; (2) before separation occurs, the use must have been long, continued, obvious or manifest, to a degree which shows permanency; and (3) the use of

the claimed easement must be essential to the beneficial enjoyment of the parcel to be benefitted." 25 Ariz.App. at 302, 543 P.2d 138.

Furthermore, an implied easement can only be made in connection with a conveyance; that is, an implied easement is based on the theory that whenever one conveys property he includes or intends to include in the conveyance whatever is necessary for its beneficial use and enjoyment. *Porter v. Griffith,* supra. The creation of easements by implication is an attempt to infer the intention of the parties to a conveyance of land and the "inference drawn represents an attempt to ascribe an intention to parties who had not thought of or had not bothered to put the intention into words, or perhaps more often, to parties who actually had formed no intention conscious to themselves." Restatement of Property, § 476, Comment *a,* at 2978 (1944).

■ Further analysis of the elements of an implied easement is necessary. While the severance of the title by the owner most frequently is voluntary, the application of the rule is not limited to such cases and applies also to a severance by judicial proceedings such as a sale by foreclosure under a mortgage. See *United States v. O'Connell,* 496 F.2d 1329 (2nd Cir.1974); *Kling v. Ghilarducci,* 3 Ill.2d 454, 121 N.E.2d 752 (1954); *John Hancock Mutual Life Insurance Company v. Patterson,* 103 Ind. 582, 2 N.E. 188 (1885); and see 25 Am.Jur.2d Easements and Licenses, § 29.

■ As for the requirement that the use must have been long, continued, obvious or manifest, to a degree which shows permanency in *Trattar v. Rausch,* 154 Ohio St. 286, 95 N.E.2d 685 (1950), the court stated at 689:

". . . it is required that the use shall have been so long continued prior to the severance and so obvious as to show that it was meant to be permanent; a mere temporary provision or arrangement made for the convenience of the entire estate will not constitute that degree of permanency required to burden the property with the continuance of the same

when divided or separated by conveyance to different parties."

Apparent or obvious use in this connection does not mean actual visibility, but rather susceptibility of ascertainment on reasonable inspection by persons ordinarily conversant with the subject. See *Frantz v. Collins*, 21 Ill.2d 446, 173 N.E.2d 437 (1961); *Sievers v. Flynn*, 305 Ky. 325, 204 S.W.2d 364 (1947); *Hutcheson v. Sumrall*, 220 Miss. 834, 72 So.2d 225 (1954); 25 Am. Jur.2d Easements and Licenses § 9.

As for the last requirement, some cases hold that the use must be strictly necessary. See *Watson v. French*, 112 Me. 371, 92 A. 290 (1914); *Cummings v. Perry*, 169 Mass. 150, 47 N.E. 618 (1897); *Waubun Beach Assoc. v. Wilson*, 274 Mich. 598, 265 N.W. 474 (1936); and see Annot. 58 A.L.R. 831. It is the general rule, however, that creation of an easement by implication from a pre-existing use does not require an absolute but only a reasonable necessity, such as will contribute to the convenient enjoyment of the property, other than a mere temporary convenience. *Cherry v. Brizzolara*, 89 Ark. 309, 116 S.W. 668 (1909); *Owsley v. Hamner*, 36 Cal.2d 710, 227 P.2d 263 (1951); *Fossum v. Stark*, 302 Ill. 99, 134 N.E. 12 (1922); see Annot. 34 A.L.R. 240 (supplemented at 100 A.L.R. 1327 and 164 A.L.R. 1007). And see *Wetmore v. Ladies of Loretto, Wheaton*, 73 Ill.App.2d 454, 220 N.E.2d 491 (1966).

Since the implication of an easement from a pre-existing use is made in the supposed execution of the parties' intent, the implication is never made where the evidence shows the absence of such intent. See *Warfield v. Basich*, 161 Cal.App.2d 493, 326 P.2d 942 (1958).

Application of the law to the facts shown by the record revealed that although Koestel demonstrated the existence of the first two elements of an implied easement, there remains a material issue of fact as to the last one and as to whether Koestel actually intended that there be another method of supplying water to Lots 34 and 35, other than by means of the pipe on Lot 297.

Prior to its resubdivision, Lot 297 was a single tract of land. When it was subdivided it was divided into two or more parcels by single owner. At that time the foreman's house derived a benefit from that portion of 297 which bore water to the lots. On November 12, 1965, a sheriff's deed separated title, thus satisfying the first element of an implied easement.

In his answers to interrogatories, Koestel states that the pipe had been in existence carrying the water across Lot 297 since 1936. This affidavit is clearly hearsay and cannot be considered in ruling on a motion for summary judgment. See *Jabczenski v. Southern Pacific Memorial Hospitals, Inc.*, 119 Ariz. 15, 579 P.2d 53 (App.1978). However, there was competent evidence which showed that the pipe across Lot 297 was in existence in 1962, three years prior to the time of the sheriff's deed. At that time Koestel was on the land and saw that the pipe which carried water from Lot 298 to 297, went to a water tower on Lot 297, and then from the water tower across 297 to the foreman's house. There is nothing indicating that the pipe was temporary only. In fact, part of it was underground. We believe this evidence demonstrated the existence of the second element of an implied easement.

However, as to the third element, there appears to be a material dispute of fact. The affidavit of appellant Carl Reinhard stated that he was the president and director of the Buena Vista Public Service Corporation. He also said that from 1959 until 1968, he was the manager of Howard Inches Water Company; that prior to the purchase of Lot 298 by the Koestels, Howard Inches Water Company was supplying water in its franchise area from the wells on Lot 298 and that on June 30, 1965, for the benefit of the Buena Vista community, the lease was entered into between the Koestels and Stewart Title and Trust No. 0261. He further states that continuously from 1961 until the present, water service has been available to Lots 34 and 35 from a certified and franchised water company, that a water line was constructed on Spa

Drive in 1960 which water line was not directly in front of the property of the Koestels but could have provided water services to Lots 34 and 35 of Spa Estates from 1960. Furthermore, appellants point to certain letters written by Koestel which seemed to indicate that Koestel never intended that there be an easement for the piping of water across Lot 297, but, instead, contemplated receiving water on Lots 34 and 35 either from the drilling of wells on the lots or from a water company.

The Koestels counter this argument by pointing to the revocation of the certificate of convenience and necessity to Howard Inches Water Company, which they contend shows that there never was any water service available to Lots 34 and 35. They also contend that Koestel's statements in the letters are taken out of context. Furthermore, Koestel contends that the well site and well which was leased to Trust 0261 was a different well from that which was providing the water flowing through the pipe on Lot 297.

From our inspection of the record we are unable to determine which well was the well that was leased to Trust 0261. Nor can we determine whether there was a water company which could have furnished the water to Koestels or not. Summary judgment should not be granted where there is a material issue of fact or where there is the slightest doubt as to material facts. *Combs v. Lufkin,* 123 Ariz. 210, 598 P.2d 1029 (App.1979). Since there are material issues of fact remaining, the trial court should not have granted summary judgment.

There are two other points which should be mentioned. First, appellants contend that the Koestels are precluded from claiming an implied easement over Lot 297 because they did not make such a claim when they filed their proof claim in bankruptcy. Since they have cited to us no authority for the proposition that in order to preserve a claim for an easement by implication, one must file a proof of claim in bankruptcy, we shall not consider it.

Second, also without the benefit of any authority, appellants claim that there can be no implied easement because the pipe runs partially under a roadway which has been dedicated to the county. This argument is also without merit.

Reversed and remanded for further proceedings consistent with this opinion.

BIRDSALL, C.J., and HATHAWAY, J., concur.