NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

NEW SUNDANCE LIMITED PARTNERSHIP, LLP, an Arizona limited
liability partnership; THE BEAR RIDGE RESORT LIMITED
PARTNERSHIP, an Arizona limited liability partnership,
*Plaintiffs/Appellees*,

*v.*

SEAN CUTLER and SHANNON CUTLER; and LYNN ELLSWORTH and
ELAINE ELLSWORTH, *Defendants/Appellants*.

No. 1 CA-CV 22-0676
FILED 10-26-2023

Appeal from the Superior Court in Navajo County
No. S0900CV201900483
The Honorable Joseph Samuel Clark, Judge

**AFFIRMED**

COUNSEL

Hunter, Humphrey & Yavitz, PLC, Phoenix
By Isabel M. Humphrey
*Counsel for Plaintiffs/Appellees*

Frazer, Ryan, Goldberg & Arnold, L.L.P., Phoenix
By Philip R. Rupprecht
*Counsel for Defendants/Appellants*

_____

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Cynthia J. Bailey and Judge Brian Y. Furuya joined.

_____

**M O R S E**, Judge:

¶1        In this case involving competing quiet-title and easement claims, Sean Cutler, Shannon Cutler, Lynn Ellsworth, and Elaine Ellsworth (collectively, "Cutlers") appeal the superior court's grant of summary judgment and award of attorney fees and costs to New Sundance Limited Partnership, LLP and The Bear Ridge Resort Limited Partnership (collectively, "New Sundance"). For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        In 1996, Lynn and Elaine Ellsworth purchased Rogers Ranch, which consisted of three parcels: Section 17, Section 18, and part of Section 19. At that time, State Route 277 ("SR 277") ran parallel to the ranch's southern border, and a two-track ranch road ran along Section 17 and Section 18's boundary line, perpendicular to SR 277 and crosswise to the Apache Railway tracks.

¶3        In 1997 and 1998, the Ellsworths sold the southern portion of Section 18 ("South Property") and Section 19 to Jerry and Bette Smith. In 2001, the Ellsworths sold Section 17 to a developer and granted an easement on the west side of Section 17 to the Aztec Land and Cattle Company ("Aztec easement"). After the sale of Section 17, the Ellsworths continued to use the ranch road to access the remaining northern portion of Section 18 ("North Property"), which they owned with David and Sandra Decker.

¶4        In 2004, the Smiths sold the South Property to New Sundance. Shortly after, New Sundance leased a portion of the South Property to the Deckers to graze livestock. About 10 years later, the Ellsworths began to construct a house on the North Property. In applying for a construction permit, the Ellsworths stated that the Aztec easement was a right of access to the North Property. A few years later, the Deckers transferred their portion of the North Property to the Ellsworths.

¶5        In January 2019, the Ellsworths deeded a portion of the North Property to Sean and Shannon Cutler, who also built a house and used the

ranch road to access their land.  By this time, the Ellsworths had moved, graded, and widened the ranch road onto the South Property where it had previously crossed over into Section 17 and connected to the North Property's southern border, and eventually moved the ranch road to run straight through the South Property to the North Property's southern border, while the ranch road over Section 17 had fallen into disuse.

**¶6**　　In May 2019, New Sundance sent the Cutlers a demand letter, prohibiting access over the ranch road, and including two quitclaim deeds, which the Cutlers refused to execute.  Seven months later, New Sundance sued the Cutlers, seeking to quiet title to the ranch road and claiming trespass.  The Cutlers counterclaimed, arguing they had an easement over the ranch road by (1) prior use, (2) implied way of necessity, (3) estoppel, (4) prescription, and (5) private way of necessity.

**¶7**　　The court eventually granted New Sundance's motion for summary judgment and awarded New Sundance attorney fees and costs.  The Cutlers timely appealed.  We have jurisdiction under A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

## DISCUSSION

### I.　Easement Counterclaims.

**¶8**　　We review an order granting summary judgment de novo, *Jackson v. Eagle KMC L.L.C.*, 245 Ariz. 544, 545, ¶ 7 (2019), and may affirm "if it is correct for any reason apparent in the record," *Forszt v. Rodriguez*, 212 Ariz. 263, 265, ¶ 9 (App. 2006).  We view the evidence and all reasonable inferences in the light most favorable to the non-movant. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003).

**¶9**　　Summary judgment is appropriate only if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  Ariz. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating both the absence of a genuine dispute of material fact and why summary judgment should be entered in its favor. *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 115, ¶ 14 (App. 2008).  When the moving party argues it is entitled to summary judgment because the non-moving party lacks evidence to support its claim, the moving party must do more than make bald assertions that the non-moving party has no evidence supporting its claim. *Id.* at 118, ¶ 23.  "[T]he burden then shifts to the non-moving party to present sufficient evidence demonstrating the existence of a genuine factual dispute as to a material fact." *Id.* at 119, ¶ 26.

¶10 The Cutlers argue that the superior court erred when it found no genuine disputes of material fact precluded summary judgment to New Sundance. The Cutlers claimed an easement over the ranch road by (1) estoppel, (2) prior use (implied easement of necessity), (3) prescription, (4) private way of necessity, and (5) implied way of necessity, all of which the superior court rejected. The Cutlers do not pursue the implied way of necessity claim on appeal. As discussed below, for each easement claim, the Cutlers failed to establish disputed facts as to an essential element of their claims and the court did not err in granting New Sundance's motion for summary judgment. *See Orme Sch. v. Reeves*, 166 Ariz. 301, 310 (1990) (granting summary judgment to the moving party is appropriate when that party shows that "no evidence existed to support an essential element of the claim").

¶11 "An easement is a right to use the land of another for a specific purpose." *Scalia v. Green*, 229 Ariz. 100, 102, ¶ 7 (App. 2011). "Easements usually are created by express conveyance, typically by deed, but may come into being less explicitly, by implication, or against the will of the owner of the burdened estate, by prescription." *Rogers v. Bd. of Regents of Univ. of Ariz.*, 233 Ariz. 262, 266, ¶ 10 (App. 2013).

### A. Easement by Estoppel.

¶12 "In the absence of contrary precedent, Arizona courts look to the Restatement." *Paxson v. Glovitz*, 203 Ariz. 63, 67, ¶ 21 n.3 (App. 2002). A landowner is estopped to deny the existence of an easement when (1) the landowner "permitted another to use that land under circumstances in which it was reasonable to foresee that the user would substantially change position believing that the permission would not be revoked," (2) "the user did substantially change position in reasonable reliance on that belief," and (3) "injustice can be avoided only by establishment" of an easement. Restatement (Third) of Property (Servitudes) § 2.10(1) (2000). For a "plaintiff to invoke an equitable estoppel, it must clearly show that there was reliance upon the conduct and conversations of the defendants." *Vantex Land & Dev. Co. v. Schnepf*, 82 Ariz. 54, 57 (1957); *cf. Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 50, ¶ 28 (App. 2007) (quoting *City of Tucson v. Whiteco Metrocom, Inc.*, 194 Ariz. 390, 396, ¶ 22 (App. 1999)) (equitable estoppel); *Chewning v. Palmer*, 133 Ariz. 136, 138 (1982) (promissory estoppel).

¶13 The Cutlers argue that because New Sundance permitted them to use the ranch road to show Section 18 to prospective buyers, they "reasonably believe[d] that permission would not be revoked" and that they

"changed their position in reliance on the belief that [New Sundance's] permission would not be revoked." Specifically, the Cutlers argue that they frequently graded the ranch road, retained the North Property, later purchased the Deckers' portion of the North Property, and "then built a house in the belief that they had permission to use the [ranch road] and that permission would not be revoked."

¶14         But the parties agree that the express permission to use the ranch road was for the limited purpose of selling the property. Permission for a limited purpose does not necessarily imply that permission would continue once the Cutlers and Deckers managed to sell either the South Property, the North Property, or all of Section 18. And aside from the livestock grazing leases and permission to use the ranch road during pre-litigation negotiations, the Cutlers do not provide evidence of other permissions that would have extended the use of the ranch road beyond the sale of the property. Instead, they only assert they "assume[d]" they could use it based on prospective buyers' possible future rights of access over the ranch road. Such an assumption was not reasonable. *See Manicom v. CitiMortgage, Inc.*, 236 Ariz. 153, 160, ¶ 28 (App. 2014) (rejecting equitable estoppel claim where initial activities "were not necessarily inconsistent" with later positions). Moreover, New Sundance was not obliged to protest the Cutlers' home constructions or construction permits based on the Cutlers' belief that it would give them an easement over New Sundance's land. *See Vantex Land & Dev. Co.*, 82 Ariz. at 58 (noting that defendant was not obliged to protest plaintiff's application for a construction permit "merely because plaintiff might have thought such permit, if allowed, would give an easement over defendants' land").

¶15         The Cutlers also rely on Illustration Five from Restatement (Third) of Property (Servitudes) § 2.10, arguing it is "particularly illustrative" and shows that the Cutlers "could reasonably believe that permission would not be revoked," absent "a clear admonition" that permission to use the ranch road to sell the property did not include a right of access. We need not decide whether Illustration Five is consistent with Arizona precedent, *e.g.*, *Vantex Land & Dev. Co.*, 82 Ariz. at 58, because Illustration Five is inapposite to the present case. The landowner in Illustration Five knew that (1) the adjacent property was landlocked; (2) his neighbor used the road to access the adjacent property; and (3) his neighbor was building a house on the adjacent property because the landowner "discussed the progress of the construction" with his neighbor on "several occasions." Restatement (Third) of Property (Servitudes) § 2.10 cmt. e, illus. 5 (2000). The Cutlers adduced no evidence to show that similar facts apply in this case.

¶16            Thus, the Cutlers failed to establish that they were entitled to an easement by estoppel over the ranch road, and we affirm summary judgment on this claim.

### B.      Easement by Prior Use (Implied Easement of Necessity).

¶17            "An implied easement of necessity requires: (1) a single tract of land arranged in a manner where one portion of the land derives a benefit from the other; (2) unity of ownership; (3) severance of the land into two or more parcels; (4) long, continued, obvious use of the subservient land, to a degree which shows permanency—by the dominate land—prior to the severance; and (5) the use of the claimed easement must be essential to the beneficial enjoyment of the dominate land." *Dabrowski v. Bartlett*, 246 Ariz. 504, 513–14, ¶ 24 (App. 2019) (citing *Porter v. Griffith*, 25 Ariz. App. 300, 302 (1975)); *cf. Koestel v. Buena Vista Pub. Serv. Corp.*, 138 Ariz. 578, 580 (App. 1984) (quoting *Porter*, 25 Ariz. App. at 302).  As to the fifth element, the necessity of the easement must exist at the time of conveyance. *Pugh v. Cook*, 153 Ariz. 246, 248 (App. 1987); *Koestel*, 138 Ariz. at 580 (noting an implied easement arises only from an earlier land conveyance and represents "an attempt to infer the intention of the parties" who meant to include "in the conveyance whatever is necessary for its beneficial use and enjoyment").

¶18            The Cutlers argue that the court erred when it found that there was no dispute of material fact to show that at the time the Cutlers severed Section 18, the Cutlers had "a necessary use" to access the North Property through the South Property.  The Cutlers specifically argue that a genuine dispute of material fact exists as to whether the ranch road was essential to the North Property at the time of severance.  We reject this argument for two reasons.

¶19            First, the ranch road was not essential to the beneficial enjoyment of the North Property at the time the Cutlers conveyed the South Property to the Smiths because the Cutlers still owned Section 17, which connected to SR 277.  The Cutlers later landlocked the North Property only when they conveyed Section 17 to a developer.

¶20            Second, New Sundance provided evidence from a surveyor, who determined that the ranch road initially crossed over into Section 17 and was not completely moved onto Section 18 until sometime between 2012 and 2014, years after the original conveyance to the Smiths.  The Cutlers offered no contradictory evidence.  Absent conflicting evidence, the survey rebuts the Cutlers' argument that the ranch road through Section 18 was "essential" to the North Property at the time of severance. *See Portonova*

*v. Wilkinson*, 128 Ariz. 501, 502 (1981) ("In the absence of controverting affidavits, facts alleged by affidavits attached to a motion for summary judgment may be considered true, and if appropriate, summary judgment may be granted."). New Sundance also pointed to deposition excerpts from Elaine Ellsworth, indicating a 2013 (or 2014) land survey revealed that the ranch road crossed over into Section 17 just south of the Cutlers' property line, which prompted Lynn Ellsworth to "straighten" out the ranch road onto Section 18. Whether in 2013 or 2014, the ranch road did not connect the South Property to the North Property through Section 18 until the Cutlers moved that portion of the ranch road on Section 17 to Section 18. Thus, the Cutlers failed to show that at the time of severance the ranch road was essential to the beneficial enjoyment of the North Property. *See Pugh*, 153 Ariz. at 248 (finding that when a party has failed to show the beneficial-enjoyment element, the entire easement claim fails). We therefore affirm summary judgment on the Cutlers' prior use claim.

### C.      Easement by Prescription.

¶21      A party claiming an easement by prescription "must establish that the land in question has actually and visibly been used for ten years, that the use began and continued under a claim of right, and [that] the use was hostile to the title of the true owner." *Paxson*, 203 Ariz. at 67, ¶ 22 (quoting *Harambasic v. Owens*, 186 Ariz. 159, 160 (App. 1996)); *see Krencicki v. Petersen*, 22 Ariz. App. 1, 3 (1974) ("[E]asements by prescription are not favored because of the losses or forfeiture of rights inflicted upon others."). "[O]nce the party claiming the easement has shown that his or her use during the statutory period was 'open, visible, continuous, and unmolested,' Arizona law presumes that the use was under a claim of right and not permissive." *Spaulding v. Pouliot*, 218 Ariz. 196, 201, ¶ 14 (App. 2008) (quoting *Gusheroski v. Lewis*, 64 Ariz. 192, 198 (1946)). The burden then shifts to the property owner to show that the use was permissive. *Id.* "If the use is permissive, it cannot ripen into an easement by prescription because it is neither 'hostile' nor 'adverse' to the owner's title." *Paxson*, 203 Ariz. at 67, ¶ 22 (quoting *Herzog v. Boykin*, 148 Ariz. 131, 133 (App. 1985)).

¶22      Further, the "mere use of another's property is insufficient to create ownership or prescriptive use without some additional act or circumstance indicating that the use is not merely permissive but hostile to the owner's rights." *Herzog*, 148 Ariz. at 133 (citation omitted). Additionally, it is insufficient "that the claim of right exists only in the mind of the person claiming it. It must in some way be asserted in such manner that the owner may know of the claim." *LaRue v. Kosich*, 66 Ariz. 299, 303 (1947) (citation and emphasis omitted). And where "implied permissive use

of the land continue[s], through 'the neighborly indulgence of its owner,' it could not ripen into a prescriptive use without 'a distinct and positive assertion of a right hostile to the owner [being] brought home to him by words or acts.'" *Herzog*, 148 Ariz. at 133 (quoting *LaRue*, 66 Ariz. at 306).

¶23 The Cutlers argue that New Sundance failed to show that the use over the ranch road was permissive. But we must first determine whether the Cutlers provided any evidence to show they used the ranch road for the statutory period and that the use was open, visible, continuous, and unmolested. *See Spaulding*, 218 Ariz. at 201, ¶ 14 (presuming permissive use only after the land in question has been openly, visibly, and continuously used for the statutory period).

¶24 The 10-year statutory period began sometime between 2012 and 2014 when the Cutlers moved a portion of the ranch road that connected to the North Property and crossed over into Section 17 north of the railroad tracks onto Section 18. The Cutlers note that "until at least October 2012" the ranch road north of the railroad tracks "crossed over onto [S]ection 17," citing to a declaration offered by New Sundance's representative. New Sundance offered evidence that Elaine Ellsworth admitted that the portion of the ranch road that crossed into Section 17 just south of the Cutlers' property line was "straighten[ed]" out by Lynn Ellsworth and moved onto Section 18 sometime after a 2013 (or 2014) survey was completed. New Sundance also pointed to the survey, *supra* ¶ 20, showing that the ranch road that crossed into Section 17 north of the railroad tracks and connected to the North Property, was moved sometime between 2012 and 2014. The Cutlers did not dispute this evidence and cite to the same evidence in their opening brief. New Sundance sought to quiet title to the ranch road in 2019. Thus, even if the Cutlers began using the ranch road in that part of Section 18 in 2012, no reasonable juror could conclude that the Cutlers met the 10-year statutory period, and their claim as to that portion of the ranch road fails.

¶25 The remaining portion of the ranch road that ran south of the railroad tracks was conveyed to the Smiths in 1998, and the Smiths then conveyed that portion of Section 18 to The Bear Ridge Resort in 2004. The parties do not dispute whether the Cutlers failed to show that they "actually and visibly" used the remaining portion of the ranch road. Instead, the Cutlers argue that New Sundance failed to show that the use over the ranch road was permissive.

¶26 New Sundance provided a declaration from their representative, indicating that he "granted Decker and Ellsworth

permission to enter the New Sundance and Bear Ridge parcels to show the property to any potential buyers, and verbally agreed to give them a commission if they managed to sell it." New Sundance's representative also indicated that the "first [he] heard that Lynn Ellsworth was claiming a *right* to cross [their] property in Section 18 was June 2019." Here, the Cutlers failed to establish prescriptive use for two reasons. First, New Sundance's grant of permission to Lynn Ellsworth would preclude an easement by prescription over the ranch road. *Paxson*, 203 Ariz. at 67, ¶ 22. Though the Cutlers provided deposition excerpts from the representative, in opposition to New Sundance's summary judgment motion, those excerpts indicate that the Cutlers had permission to access the ranch road and the South Property to show Section 18 to prospective buyers. Second, even though the Cutlers eventually made "a distinct and positive assertion of a right hostile" to New Sundance in 2019, the representative had already granted permission to the Cutlers to use the ranch road by that time. *LaRue*, 66 Ariz. at 306. Thus, the Cutlers failed to establish a claim for an easement by prescription over the remaining ranch road. We therefore affirm summary judgment on the prescriptive use claim.

### D. Private Way of Necessity.

**¶27** The Cutlers alternatively argue they are entitled to a private way of necessity over the ranch road. Arizona law permits a private landowner to condemn and take lands of another when the land "is so situated with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity." A.R.S. § 12-1202(A). The "landowner seeking to condemn a private way of necessity over the lands of another must show a 'reasonable necessity' for the taking." *Tobias v. Dailey*, 196 Ariz. 418, 420, ¶ 1 (App. 2000). To prove "reasonable necessity," the landowner seeking condemnation must prove that "they lack an adequate alternative outlet." *Id.* at ¶ 8. A private way of necessity "comes into existence only if no other access exists by common law implication." *Bickel v. Hansen*, 169 Ariz. 371, 375 (App. 1991) (distinguishing an implied way of necessity from an implied easement of necessity). An implied way of necessity is dependent on (1) "unity of ownership of the dominant and servient estates," (2) "a severance thereof," (3) "no outlet" for the dominant estate, and (4) showing that "reasonable necessity" for access existed at the time of severance. *Id.* at 374. A way of necessity results from "the presumption that whenever a party conveys property he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of the land he still possesses." *Id.*

¶28 The Cutlers failed to establish that they lack an adequate alternative outlet over Section 17, the conveyance of which caused the North Property to become landlocked in the first instance. The Cutlers argue that the North Property had adequate and legal access through the ranch road at the time they conveyed Section 17 to the developer, and accordingly, could not acquire an implied way of necessity over Section 17. But the Cutlers assumed that they had the legal right to use the ranch road, which they failed to prove, *see supra* ¶¶ 12–26, and abandoned their implied way of necessity claim over Section 18. Conceding unity of title over the North Property and Section 17 at the time they conveyed Section 17 to the developer, and failing to prove legal access to the North Property at the time of conveyance, other than over the ranch road, the Cutlers failed to adequately rebut the inference that they were entitled to an implied way of necessity over Section 17. *See Dabrowski*, 246 Ariz. at 514, ¶¶ 26–27 (defining implied way of necessity). The Cutlers also argue that at the time they sold Section 17, the developer "took an option on the northern portion of section 18 making the need for an easement, at that juncture, moot." But the Cutlers fail to explain how the developer's option in the North Property provided them legal access to the North Property, making an implied way of necessity "moot." Thus, the court properly granted New Sundance's motion for summary judgment as to the private way of necessity claim.

## II.    Quiet Title and Trespass.

¶29 An action to quiet title to real property may be brought by anyone having an interest in that property against any person claiming an interest in the real property, which is adverse to the party seeking to quiet title. A.R.S. § 12-1101(A).

¶30 New Sundance proved title to the South Property and that the Cutlers used the ranch road despite not having an easement. Additionally, the Cutlers "never claimed" title to the ranch road, and conceded that they used the ranch road to deliver construction material and equipment to their land and directed the construction workers to cut the gate lock leading to the ranch road. Thus, no genuine dispute of material fact exists regarding the easement claims and New Sundance is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a).

## III.    Attorney Fees and Costs.

¶31 We review an award of attorney fees and costs for an abuse of discretion. *Skydive Ariz., Inc. v. Hogue*, 238 Ariz. 357, 369, ¶ 50 (App. 2015).

The Cutlers request that we reverse the court's award of attorney fees and costs to New Sundance but have shown no reversible error.

¶32        New Sundance are entitled to attorney fees if they met the requirements under A.R.S. § 12-1103(B). *Long v. Clark*, 226 Ariz. 95, 96, ¶ 5 (App. 2010) (awarding attorney fees under a quiet title claim). New Sundance met the statutory requirements: (1) they requested that the Cutlers execute two quitclaim deeds in May 2019, at least 20 days before bringing their action to quiet title to the ranch road; (2) they tendered five dollars for each quitclaim deed; and (3) the Cutlers refused to execute the quitclaim deeds. A.R.S. § 12-1103(B). The court did not abuse its discretion in awarding New Sundance their reasonable attorney fees and costs.

¶33        Both parties request an award of attorney fees on appeal. The Cutlers are not the successful party on appeal, and we deny their request for attorney fees. New Sundance request their attorney fees under A.R.S. § 12-1103(B), citing *Lewis v. Pleasant Country, Ltd.*, 173 Ariz. 186, 195 (App. 1992). New Sundance met the requirements under A.R.S. § 12-1103(B), and we award New Sundance their reasonable attorney fees upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶34        For the above-stated reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA