598 P.2d 1029

Jack W. COMBS and Pauline D. Combs, husband and wife, Milton K. Clegg and Johnnie Raye Clegg, husband and wife, Boyd B. Combs and Georgia Combs, Individually and as stockholders of Combs & Clegg Industries, Inc., an Arizona Corporation and Combs & Clegg Industries, Inc., an Arizona Corporation whose charter has been revoked, Plaintiffs/Appellants,

v.

Dean E. LUFKIN and Cora A. Lufkin, husband and wife, Arthur S. Brooks, Lufkin Construction Co., Inc., an Arizona Corporation, Environmental Growth, Inc., an Arizona Corporation, and Commodities of Arizona, Inc., an Arizona Corporation, Defendants/Appellees.

No. 2 CA–CIV 2995.

Court of Appeals of Arizona, Division 2.

May 23, 1979.

Rehearing Denied June 27, 1979.

Review Denied July 19, 1979.

Engdahl, Jerman & Estep by Dean Estep, and Kunz & Waugh, Ltd. by Donald R. Kunz, Phoenix, for plaintiffs/appellants.

Cunningham, Goodson & Tiffany, Ltd., by Dow Glenn Ostlund, Phoenix, for defendant/appellee Commodities of Arizona, Inc.

Treon, Warnicke, Dann & Roush, P.A. by Charles D. Roush and Francis G. Fleming, Jr., Phoenix, for all other defendants/appellees.

## OPINION

HOWARD, Judge.

This is an appeal from a summary judgment. After granting a motion for mistrial, the trial court invited the appellees to file a motion for summary judgment and then granted it because it hoped it would be appealed and then "maybe we could get a determination of what the issues are in this case . . . ."

■ It is axiomatic that summary judgment should not be granted where there is a material issue of facts or where there is the slightest doubt as to the material facts. *Shea North, Inc. v. Ohio Casualty Insurance Co.,* 115 Ariz. 296, 564 P.2d 1263 (App.1977); *Bendalin v. Valley National Bank of Arizona,* 24 Ariz.App. 575, 540 P.2d 194 (1975).

The record, considered in the light most favorable to the appellants, shows that all individual appellants except Georgia Combs was stockholders of Combs & Clegg Industries, Inc. (C&C) in December of 1970. C&C was operating a turkey ranch and was having financial difficulties. The ranch hired Mr. Treadaway to obtain financing or refinancing to pay off an indebtedness owed to Ralston Purina Company. Mr. Treadaway then engaged appellee Arthur Brooks to assist in obtaining the financing since he was purportedly an expert in that field. Treadaway came to the conclusion that the company's turkey operations had to be increased in order to obtain a greater flow of income. This required the construction of a number of large steel buildings and appellee Lufkin, a contractor, was contacted by Treadaway to erect the buildings. Lufkin started construction but after a time it became clear that the necessary financing could not be obtained. Jack Combs and C&C informed Mr. Lufkin, who had not yet been paid, of this fact. Mr. Lufkin told Combs that perhaps he and Brooks could work something out.

After an abortive attempt to merge with another corporation, Brooks and Lufkin decided that the best thing to do would be to form a new corporation. The stockholders of C&C met with Brooks and Lufkin and they agreed as follows. Brooks and Lufkin were to accept non-voting stock of the new corporation for any amounts C&C owed to Brooks, individually, and Lufkin Construction Company, Inc. Brooks and Lufkin were to assume the obligation of paying and/or satisfying all creditors of C&C, either for the full amount due or, in the event the creditors would agree to accept less, for a reduced amount. They would pay creditors with their own funds or from financing which they would obtain. Brooks and Lufkin agreed that they would take non-voting stock in the new corporation for the amount of the creditors' claims which they paid with their own funds, whether or not the creditor was paid the full amount due. Non-voting stock in the new corporation would be issued to appellants based on the value of $300,000, representing the difference in the value of certain known assets of C&C with an agreed value of at least $1,700,000, and the amount owed to creditors, which was determined to be not more than $1,400,000. If other assets or claims were later determined to be of value, appellants would receive additional non-voting stock for that amount. It was also agreed that the only voting stock would be issued to Lufkin and Brooks, so they could have freedom of action in compromising creditors' claims. The corporation which was to be formed was to be known as Environmental Growth, Inc.

The stockholders were assured that nothing would be done unless provisions were made for taking care of the creditors, legal expenses and personal guarantees on which the stockholders were liable in relation to

C&C's debts. Lufkin's attorney was given the task of preparing the papers to consummate the transaction. The only documents he prepared were those necessary to transfer legal title to assets and an assignment of a lease. When it was pointed out that none of the papers stated that Brooks and Lufkin were assuming the liabilities of C&C, Brooks stated that his attorney had advised him that in order to get the job done they could not write out everything agreed upon and not having their agreement to assume the liabilities in writing would give Brooks and Lufkin more leverage in dealing with the creditors. Brooks also told the appellants that they did not need to take the papers to an attorney since everything had already been done by his attorney and it was the best for everyone not to have any other attorneys involved because the rest of the attorneys in town were representing creditors of C&C.

The discussions concerning the papers not stating the assumption of liabilities by Lufkin and Brooks continued until they agreed to do something to assure C&C that the liabilities would be paid. Finally they prepared and signed a letter in which they stated, inter alia, that they, Lufkin and Brooks, would pay or satisfy the creditors of C&C and that all of the legal expenses in connection with the creditor suits and other suits would be "taken care of". This letter was shown to some of the shareholders to induce them to transfer their stock certificates in C&C to Brooks and Lufkin. However, a copy of this letter was not delivered to any of the appellants and appellees claim that such a letter never existed.

Brooks and Lufkin did not pay the creditors of C&C. Appellants were sued on their personal guarantees in relation to C&C's debts and judgments were entered against them. Brooks and Lufkin organized a new corporation, Commodities of Arizona, Inc. and almost all the assets of Environmental Growth, Inc., which formerly belonged to C&C, wound up being owned by Commodi-

ties of Arizona, Inc. The $300,000 in stock which appellants were to receive in Environmental Growth, Inc. was never issued to them. Instead, Acme-Long Sawdust Products, an unsecured creditor of C&C served a writ of garnishment on Environmental Growth and eventually 100,000 shares of stock in Environmental Growth was issued to Acme-Long. Subsequently, Lufkin acquired the certificate of shares from Acme-Long by paying less than $1,000. Brooks then paid Lufkin ½ of the amount Lufkin paid for the shares of stock and sent the certificate to his sister in Pennsylvania.

Appellants' fourth amended complaint consists of two counts. Count I is for fraud [1] and alleges, inter alia, that when they made the promise to pay C&C's creditors, Brooks and Lufkin never had a present intention of doing so. It asks for compensatory damages, punitive damages and a return of all real property transferred to Environmental Growth, Inc. including 800 acres of land transferred to Commodities of Arizona. Count II is for breach of contract.

■ As to both counts, appellees claim they were entitled to summary judgment based on the doctrine of judicial estoppel. They assert that Jack Combs made certain statements in other proceedings, under oath, directly contrary to his contention herein that Brooks and Lufkin personally agreed to pay C&C's creditors. We have examined the testimony and conclude that it is, at the very least, ambiguous and is not contrary to the claims here. Furthermore, appellees have not shown us that appellants obtained judicial relief as the result of these statements. See *Mecham v. City of Glendale*, 15 Ariz.App. 402, 489 P.2d 65 (1971). Summary judgment cannot be granted on the theory of judicial estoppel.

■ On the contract claim, appellees first contend that the alleged promise to pay the debts of C&C was oral and therefore falls within A.R.S. Sec. 44–101(2), which provides that the promise to pay a debt of another must be in writing. We need not decide

1. This count also contains an allegation of fraud in the sale of securities under A.R.S. Secs. 44–1991 and 44–2001.

whether the promise here is within the "leading object" exception to the statute of frauds enunciated in *Yarbro v. Neil B. McGinnis Equipment Co.,* 101 Ariz. 378, 420 P.2d 163 (1966) because there is a material issue of fact as to whether the agreement was reduced to writing. If appellants can prove that the letter agreement did in fact exist, then oral evidence as to its contents is admissible. Rule 1004, Arizona Rules of Evidence. The statute of frauds would then be satisfied.

Appellees contend that introduction into evidence of any written or oral agreement to pay the creditors of C&C would violate the parol evidence rule. They first point to the fact that the minutes of the special meeting of the C&C stockholders, which show that the assets were being transferred to Environmental Growth in consideration of $300,000 of common non-voting stock in Environmental Growth, do not contain any provision relating to the payment of the creditors of C&C. They also point out that the minutes of Environmental Growth, Inc. specifically state that the incorporators, Brooks and Lufkin, accept the transfer of all the assets of C&C without Environmental Growth assuming any of the liabilities of C&C. The parol evidence rule is a substantive rule of law rather than an evidentiary rule, and it excludes the use of parol evidence to add to, subtract from, vary or contradict the terms of a complete and unambiguous written contract. *Richards Development Company v. Sligh,* 89 Ariz. 100, 358 P.2d 329 (1961). All evidence of that which transpires in a meeting of the directors of a corporation may be received, and such evidence does not violate the parol evidence rule, since corporation minutes do not constitute a written instrument in the sense in which the phrase is used with reference to the parol evidence rule. *Boone v. Hall,* 100 Cal.App.2d 738, 224 P.2d 881 (1950). Furthermore, what is contained in the minutes of the organizational meeting of Environmental Growth, Inc. is, for the purposes of the parol evidence rule, immaterial, since none of the appellants were present nor did they sign the minutes. Summary judgment should not have been granted on the contract claim.

As far as the fraud count is concerned, appellees contend that there was no right to rely because at the time of the execution of the documents herein there were clear written provisions contrary to the alleged representations of which the appellants were aware. We have been unable to find such documents in the record.

Appellees also contend, as being dispositive, that there was no showing that C&C as a corporation relied upon the alleged representations. If this contention has any relevancy, it is without merit. A corporation can only act through its officers, directors and stockholders and the representations were made to the officers, directors and stockholders of C&C.

The judgment in favor of the appellees is reversed and the case is remanded for further proceedings.

RICHMOND, C. J., and HATHAWAY, J., concur.