NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SHAMROCK GLEN OWNERS' ASSOCIATION, an Arizona non-profit
corporation, *Plaintiff/Appellant*,

*v.*

GEORGE L. EVANS, an unmarried man, *Defendant/Appellee*.

No. 1 CA-CV 13-0156
FILED 4-10-2014

Appeal from the Superior Court in Maricopa County
No. CV2011-018285
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

Brown Olcott PLLC, Phoenix
By Jonathan J. Olcott, Lydia Peirce Linsmeier
*Counsel for Plaintiff/Appellant*

Mead & Associates, Glendale
By Terrance C. Mead
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Randall M. Howe and Judge Diane M. Johnsen joined.

---

**T H U M M A,** Judge:

**¶1**       This breach of contract case was resolved by the superior court on cross-motions for summary judgment. Finding no genuine dispute of material fact or legal error, the judgment in favor of defendant is affirmed.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**       Shamrock Glen, L.L.C. (Developer) converted a Phoenix apartment complex into a 57-unit condominium called Shamrock Glen. In 2006, Developer incorporated plaintiff Shamrock Glen Owners' Association (Association).

**¶3**       Developer was the declarant under the Condominium Declaration and Declaration of Covenants, Conditions and Restrictions (CC&Rs), recorded in April 2006.[2] The CC&Rs provided for a period of "declarant control," starting on the date the CC&Rs were recorded. In October 2006, during the period of declarant control, defendant George L. Evans purchased a Shamrock Glen condominium unit from Developer for $175,900. Developer offered certain purchasers, including Evans, a waiver of ordinary monthly fees and assessments, with the agreement that Developer "would pay the assessments on behalf of the" purchaser. Developer waived Evans' monthly regular assessment for as long as he owned his unit in exchange for Evans providing engineering and

---

[1] On appeal from a grant of summary judgment, this court views the evidence and reasonable inferences in a light most favorable to the non-moving party. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003).

[2] This court may take judicial notice of documents recorded in the County Recorder's Office. *See Sitton v. Deutsche Bank Nat'l Trust Co.*, 233 Ariz. 215, 218 n.2, ¶ 14, 311 P.3d 237, 240 n.2 (App. 2013).

consulting services. Ingrid Warrick, Developer's operations manager, prepared a written waiver agreement allocating $15,000 of the purchase price Evans paid toward the waiver. Developer and Evans signed the waiver agreement, and Evans provided the agreed-upon services.

¶4            The period of declarant control then ended and Developer relinquished control over the Association and relinquished control over Shamrock Glen to the Association. When the Association assumed control, on behalf of the Developer, Warrick delivered files for each condominium unit to the Association. The file the Developer delivered to the Association for Evans' unit included the signed waiver agreement and other documents. In April 2008, Association president Shakirah-Joy Karim delivered the unit files and original accounting records to her successor, Sharyn Miller. Evans' unit file, including his original signed waiver agreement and a record of Evans' satisfaction of $15,000 in regular assessment obligations, was among the records transferred.

¶5            In July 2010, after Evans refused to pay regular assessments, the Association sued him in justice court for $6,258.50 (including late fees and related costs), alleging breach of contract, open account and quantum meruit. Evans denied liability and asserted setoff and quantum meruit counterclaims. After Evans filed a third-party complaint against Developer, the justice court determined that the amount in controversy exceeded the jurisdictional limit, and the case was transferred to superior court. *See* Arizona Revised Statutes (A.R.S.) section 22-201 (2014).[3]

¶6            The Association moved for partial summary judgment, and Evans cross-moved for summary judgment. The superior court granted summary judgment to Evans, finding there was no disputed issue of material fact; that, at the very least, there was an oral agreement between Evans and Developer waiving Evans' obligation to pay regular assessments; that the agreement was not barred by the statute of frauds given Evans' full performance and that Evans was not responsible to ensure that the Developer properly transferred to the Association the fees and assessments for which Evans received credit. Evans then dismissed the third-party complaint and the court entered judgment in Evans' favor and awarded him $46,822 in attorneys' fees and $454 in costs. This court has jurisdiction over the Association's timely appeal pursuant to A.R.S. § 12-2101(A)(1).

---

[3] Absent material revisions after the relevant dates, statutes cited refer to the current version unless otherwise indicated.

## DISCUSSION

**I.** **The Undisputed Evidence Establishes That Evans Satisfied His Assessment Obligations.**

### A. Affidavits From Evans' Witnesses.

**¶7** As a party seeking summary judgment, Evans had the burden to offer evidence to disprove the Association's claims or present legal argument why the Association's claims otherwise failed as a matter of law. Ariz. R. Civ. P. 56(c)(3); *see Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 117, ¶ 22, 180 P.3d 977, 982 (App. 2008). If Evans met that burden, the Association was required to offer controverting evidence or otherwise show why Evans' motion should be denied. Ariz. R. Civ. P. 56(e)(4); *see Thruston*, 218 Ariz. at 119, ¶ 26, 180 P.3d at 984.

**¶8** Evans offered evidence of the waiver agreement in the form of lengthy, detailed affidavits from Warrick, Karim and Evans himself. The affidavits describe the terms of the agreement and state that the agreement was signed by Evans and the Developer, and transferred to successor Association president Miller, along with a record of Evans' satisfaction of $15,000 in regular assessment obligations. The affidavits also show that Evans performed valuable consulting and engineering services in exchange for the waiver, with Warrick's affidavit stating that bids from engineers indicated the value of such services exceeded $70,000. The affidavits further state that the only compensation Evans received was in the form of the assessment waiver.

### B. Affidavits From The Association's Witnesses.

**¶9** In response to Evans' showing, the Association relied on an affidavit from Donna Murphy and two affidavits from Debora Katzenberger. None of these affidavits indicate that Murphy or Katzenberger inspected Evans' unit file. Indeed, it appears that at some point (perhaps as early as December 2008) the Association could not find the files transferred by the Developer.[4] As a result, the affidavits relied

---

[4] Evans' affidavit states that "[b]y early 2010, I was advised by the [Association] board of directors that they could not locate, and apparently had lost, all of its records of my payments and credits." Karim's affidavit states that, at a December 2008 Association meeting, "the new officers and directors of the [Association] stated that the original financial accounting

upon by the Association could not dispute affidavits Evans offered stating that the Developer transferred his written waiver agreement with his unit file to the Association.

¶10        Instead, the affidavits offered by the Association purport to summarize an internal account statement for Evans with the first substantive entry stating "PREVIOUS BALANCE" dated September 30, 2009; an internal summary from January 2007 to September 2009 showing a negative starting balance; and bank accounts from December 2006 through July 2007 for an Association account opened December 13, 2006. None of these affidavits rebut the detailed factual statements regarding the waiver agreement and related information in the affidavits provided by Evans.

¶11        Moreover, the affidavits Evans offered show that the Association's witnesses lacked personal knowledge regarding the written waiver agreement. Warrick and Karim state that the Association did not employ Katzenberger during the relevant time period, meaning she lacked personal knowledge, and that Katzenberger had no involvement in the transactions at issue. Likewise, Murphy did not become an Association board member until June 2009, and had no involvement in the Association's day-to-day activities or money transfers before assuming office.

¶12        The Association claims the Murphy and Katzenberger affidavits support an assertion that funds equivalent to the services Evans purportedly provided were not transferred to the Association. The records on which the affidavits are based, however, do not go back to October 2006 (when Evans bought his unit) or even the beginning of December 2006. Moreover, the Association has not shown how an internal accounting function proves that a written contract did not exist, particularly where the Association appears to claim it was unaware of the contract until after this litigation began in July 2010. As provided in the CC&Rs, the Developer controlled the Association at the time it granted the waiver to Evans. Any purported failure by the Developer to transfer the equivalent funds to the Association would not invalidate the written waiver agreement between the Developer and Evans. Moreover, even if the Association's affidavits had traced back to the relevant time frame and

_____

records were missing and that they intended to recreate the records from bank deposit records."

were based on personal knowledge,[5] the lack of such a transfer of funds is not inconsistent with the existence of the waiver agreement, the terms of which meant there were no assessment payments owed by Evans.

¶13      On this record, Evans discharged his burden on summary judgment, and the Association failed to offer controverting evidence or otherwise show why Evans' motion should not be granted. *See Thruston*, 218 Ariz. at 119, ¶ 26, 180 P.3d at 984.

## II.    The Statute Of Frauds Does Not Bar Enforcement Of The Waiver Agreement.

¶14      The Association argues the statute of frauds precludes enforcement of the waiver agreement because there is no signed writing containing the agreement. *See* A.R.S. § 44-101. Setting aside whether a statute of frauds can be invoked by a party that apparently lost or discarded the very writing it claims cannot be enforced, full performance by one party to the contract takes an agreement outside the statute of frauds. *See, e.g.*, *Cavanagh v. Kelly*, 80 Ariz. 361, 364, 297 P.2d 1102, 1104 (1956). The record indicates that Evans performed his obligations under the waiver agreement by providing engineering and related services. Accordingly, because Evans fully performed, the statute of frauds does not bar enforcement of the agreement. *See Long v. City of Glendale*, 208 Ariz. 319, 329-30, ¶¶ 35-37, 93 P.3d 519, 529-30 (App. 2004) (applying full performance exception to statute of frauds); *In re Estate of MacDonald*, 4 Ariz. App. 94, 99, 417 P.2d 728, 733 (1966) (same).[6]

---

[5] Evans argues that the documents relied upon by the Association were inadmissible for purposes of summary judgment. Ariz. R. Civ. P. 56(e)(1); Ariz. R. Evid. 803(6) and 901. As with the superior court, this court need not resolve that issue given the analysis of the substance of the affidavits.

[6] The court also rejects the Association's claim that Evans was required to provide the original written waiver agreement. Setting aside whether such a claim properly can be pressed by the party that apparently lost or discarded the original written agreement it claims must be produced, "[i]n cases of loss or destruction, the contents of a memorandum may be shown by an unsigned copy or by oral evidence." Restatement (Second) of Contracts § 137 cmt. a (1981). The affidavits Evans offered suffice for this purpose. *See, e.g.*, *Combs v. Lufkin*, 123 Ariz. 210, 214, 598 P.2d 1029, 1033 (App. 1979); Ariz. R. Evid. 1004(a).

### III. Enforcement Of The Waiver Agreement Does Not Violate The CC&Rs Or Arizona Law.

¶15　　　The Association argues that the Developer and Evans illegally modified the CC&Rs and that the waiver agreement is otherwise inconsistent with the CC&Rs and Arizona law. The CC&Rs, however, contain no prohibition on payment through services, and there is no evidence that other unit owners paid more than 1/57th of common expenses. Unlike in *La Esperanza Townhome Ass'n, Inc. v. Title Security Agency of Arizona*, the waiver the Developer granted to Evans does not result in inconsistent burdens or a violation of the limiting language in the CC&Rs. 142 Ariz. 235, 237-39, 689 P.2d 178, 180-82 (App. 1984).

¶16　　　Nor has the Association shown that enforcing the waiver agreement violates any statute or public policy. Evans met his obligation by providing services that represent an alternative form of payment and Shamrock Glen received the benefit of those services during the period of declarant control. That benefit remained with Shamrock Glen when the Developer relinquished control over the Association and relinquished control over Shamrock Glen to the Association. Accordingly, the Association's cases on land use restrictions do not apply here.

### IV. Attorneys' Fees.

¶17　　　The superior court awarded Evans his attorneys' fees pursuant to A.R.S. §§ 33-1256(H) and 12-341.01(A). On appeal, the Association does not address A.R.S. § 33-1256(H) but argues instead that the fee award under A.R.S. § 12-341.01(A) is excessive and will have a chilling effect on condominium owners who rely upon declarations. Finding no abuse of discretion, the court affirms the superior court's fee award pursuant to A.R.S. §§ 33-1256(H) and 12-341.01(A).

## CONCLUSION

¶18     The superior court's grant of summary judgment to Evans is affirmed. Because the Association is not the prevailing party on appeal, its request for an award of attorneys' fees and costs is denied. Recognizing Evans is the prevailing party on appeal, in the exercise of the court's discretion, Evans is awarded his reasonable attorneys' fees on appeal pursuant to A.R.S. § 33-1256(H), and Evans is awarded his costs on appeal, all contingent upon his compliance with Arizona Rule of Civil Appellate Procedure 21.



Ruth A. Willingham · Clerk of the Court
FILED: MJT