IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

FEB 15 2006

COURT OF APPEALS
DIVISION TWO



GREGG FORSZT and VESTAR ) 
ARIZONA XLI, L.L.C., ) 
          ) 
         Plaintiffs/Appellants/ )     2 CA-CV 2005-0216 
          Cross-Appellees, )     DEPARTMENT A 
          ) 
         v. )     O P I N I O N 
          ) 
F. ANN RODRIGUEZ, Pima County ) 
Recorder, ) 
          ) 
         Defendant/Appellee/ ) 
          Cross-Appellant, ) 
          ) 
   and ) 
          ) 
STOP O.V. OUTRAGEOUS ) 
GIVEAWAYS, an Arizona political ) 
committee, ) 
          ) 
         Intervenor/Cross-Appellant. ) 
          ) 

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20055917

Honorable Ted B. Borek, Judge

AFFIRMED

Lewis and Roca LLP
  By Susan M. Freeman, John N. Iurino, and
   John C. Hinderaker                      Tucson
                                       Attorneys for Plaintiffs/
                                 Appellants/Cross-Appellees

Barbara LaWall, Pima County Attorney
  By Karen Friar and Christopher Straub                    Tucson
                                                Attorneys for Defendant/
                                                Appellee/Cross-Appellant


Stinson Morrison Hecker LLP
  By Jeffrey J. Goulder and James E. Holland, Jr.              Phoenix
                                                Attorneys for Intervenor/
                                                Cross-Appellant

H O W A R D, Presiding Judge.

**¶1**      Plaintiffs/appellants Gregg Forszt and Vestar Arizona, XLI, L.L.C., appeal from the trial court's denial of a writ of mandamus and declaratory judgment compelling defendant/appellee F. Ann Rodriguez, the Pima County Recorder, to disqualify the signature sheets filed by intervenor Stop O.V. Outrageous Giveaways (SOVOG) requesting a referendum election in the Town of Oro Valley. Because we conclude the trial court correctly denied the relief requested, we affirm its ruling.[1]

**¶2**      The facts relevant to this appeal are not in dispute. On April 7, 2004, the Town of Oro Valley adopted an ordinance that authorized it to enter into an economic development agreement with Vestar. The agreement provided that Vestar would develop

---

[1]The Pima County Recorder cross-appealed, challenging the trial court's decision on the scope of her duties when referendum petitions are filed. Because we determine that she properly fulfilled her duties in this case, we need not determine the extent of her duties for other referendum petitions. Furthermore, any discussion of her duties in the trial court's order was unnecessary to the ultimate decision and has no binding effect. The cross-appeal is therefore moot.

a shopping center on land it owned in Oro Valley. In exchange, Oro Valley would share with Vestar a portion of the sales tax revenues collected from the shopping center. SOVOG sought to challenge the ordinance by referendum and collected over 1,200 signatures on 118 signature sheets. SOVOG circulated the signature sheets with a copy of the ordinance attached while it was collecting these signatures, but removed the ordinance from the signature sheets before submitting the completed referendum petition to the Oro Valley town clerk. The clerk refused to accept the petition for filing on the ground that the ordinance was an administrative rather than a legislative act and, therefore, was not subject to referendum.

¶3 SOVOG filed a special action petition challenging the town clerk's conclusion that the ordinance was not referable and sought an order requiring the clerk to transmit the petition to the Pima County recorder's office for the verification of signatures (*SOVOG I*). Vestar intervened in the action and moved for summary judgment against SOVOG. SOVOG filed a cross-motion for summary judgment against Vestar and moved for summary judgment against Oro Valley. The trial court granted Vestar's motion on the basis that the ordinance was an administrative act and, thus, was not referable. On appeal, this court reversed that decision, holding that the ordinance was a legislative act subject to referendum. *Stop O.V. Outrageous Giveaways v. Cuvelier*, No. 2 CA-CV 2004-0216 (decision order filed Feb. 11, 2005). On remand, the parties to *SOVOG I* stipulated to a form of judgment, which the trial court subsequently entered. That judgment expressly ordered the town clerk "to accept and transmit" the referendum petition to the Pima County recorder for verification of signatures.

3

¶4        SOVOG again attempted to submit its referendum petition to the town clerk. The clerk notified SOVOG that the petition was incomplete because the ordinance was not attached to the signature sheets as required by A.R.S. § 19-121(A)(3). SOVOG immediately requested permission to reattach the ordinance to the signature sheets. The clerk denied the request and refused to transmit the signature sheets to the recorder.

¶5        SOVOG again sought special action relief against the town clerk (*SOVOG II*). Vestar did not intervene in that proceeding. In its complaint, SOVOG argued that the doctrine of res judicata prevented the town clerk from refusing to transmit the signature sheets. SOVOG also argued that the clerk should have given SOVOG the opportunity to cure the technical defect. The trial court ruled in SOVOG's favor, finding that the town clerk was barred by res judicata from refusing to transmit the petitions. The court declined to reach the issue of whether SOVOG had cured or should have been allowed to cure any defect. The town clerk did not appeal the court's ruling.

¶6        In compliance with the trial court's order in *SOVOG II*, the town clerk transmitted a sample of the signed petitions to the Pima County recorder. *See* A.R.S. § 19-121.01(B) and (C). Vestar independently wrote to the Pima County recorder, asking her to disqualify SOVOG's referendum petition pursuant to her authority under § 19-121.01(A)(1)(a) because the signature sheets had not been filed with the clerk with the ordinance attached. The Pima County recorder responded that, in conformity with statutory procedure, she had only received a copy of "the front page" of the sample signature sheets and, therefore, never possessed, nor would ever possess, the materials from which she could

4

disqualify the referendum petition on that ground. The recorder verified that the referendum petition contained sufficient valid signatures for an election.

¶7        Forszt and Vestar then filed this action, seeking a writ of mandamus and declaratory judgment against the Pima County recorder to compel her to disqualify the signature sheets (*SOVOG III*). Forszt had not been a named party in any of the previous lawsuits concerning this issue. SOVOG intervened and opposed the request on the following grounds: (1) the signatures were still valid, notwithstanding the failure to attach the ordinance when filed, because the ordinance had been properly attached when the petitions had been circulated; (2) that the Pima County recorder did not have statutory authority to disqualify the signatures based on their condition at the time of filing with the town clerk; (3) under the doctrine of res judicata, the judgment in *SOVOG I* barred Forszt and Vestar from receiving the relief they sought; and (4) SOVOG would have cured the defect in a timely fashion had the town clerk allowed it to do so.

¶8        Although Forszt and Vestar did not dispute that the petitions had been circulated with the ordinance attached, they maintained that the failure to file the petitions in that form required that the Pima County recorder declare all signatures invalid. The trial court denied relief, finding that SOVOG had rebutted the presumption of invalidity that had arisen when it submitted the petition without copies of the ordinance attached and that equitable considerations weighed in favor of allowing the petition to be "placed before the voters." This appeal followed.

5

**PRESUMPTION OF VALIDITY**

¶9        Forszt and Vestar first argue that the trial court erred by finding that SOVOG had restored the presumption of validity of the signature sheets. "Because election contests are statutory proceedings, we evaluate appellants' argument by considering the applicable statutory scheme. We resolve questions of law involving statutory construction de novo." *Open Primary Elections Now v. Bayless*, 193 Ariz. 43, ¶ 9, 969 P.2d 649, 652 (1998). We may affirm the trial court's ruling if it is correct for any reason apparent in the record. *See Washburn v. Pima County*, 206 Ariz. 571, ¶ 7, 81 P.3d 1030, 1034 (App. 2003). And we review the denial of a writ of mandamus for an abuse of discretion. *Garcia v. City of South Tucson*, 135 Ariz. 604, 606, 663 P.2d 596, 598 (App. 1983).

¶10        Arizona recognizes a strong public policy favoring the powers of initiative and referendum. *W. Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 428, 814 P.2d 767, 769 (1991); *Pioneer Trust Co. of Ariz. v. Pima County*, 168 Ariz. 61, 66, 811 P.2d 22, 27 (1991). But, because the referendum process, as distinguished from the initiative process, permits a minority to challenge and delay the effective date of legislation already passed by the voters' elected representatives, our supreme court has required referendum proponents to strictly comply with applicable constitutional and statutory provisions governing that process. *W. Devcor*, 168 Ariz. at 429, 814 P.2d at 770; *Cottonwood Dev. v. Foothills Area Coal. of Tucson, Inc.*, 134 Ariz. 46, 49, 653 P.2d 694, 697 (1982); *see also Feldmeier v. Watson*, 211 Ariz. 444, ¶¶ 14-15, 123 P.3d 180, 183-84 (2005).

**¶11** Nonetheless, proponents' failure to strictly comply with a procedural statutory requirement does not always necessitate that the referendum petition be declared void. In *Direct Sellers Ass'n v. McBrayer*, 109 Ariz. 3, 5, 503 P.2d 951, 953 (1972), our supreme court noted the limited permissible scope of statutory referendum requirements: "If such legislation does not unreasonably hinder or restrict the constitutional provision and if the legislation *reasonably supplements the constitutional purpose*, then the legislation may stand." (Emphasis added.) The court held that the omission of a required avowal in a circulator's affidavit that the circulators were qualified electors did not render all the attached signatures "null and void," but merely destroyed their presumption of validity. *Id*. And, although the court had previously concluded that the avowal in question was a valid statutory requirement, it held that the presumption could be reinstated "on proof that the circulators were in fact qualified electors." *Id.; see also W. Devcor*, 168 Ariz. at 429-31, 814 P.2d at 770-72 (acknowledging that defect in affidavit attached to referendum petition did not render signatures null and void and that presumption of validity could be restored with proper showing); *Homebuilders Ass'n of Cent. Ariz. v. City of Scottsdale*, 186 Ariz. 642, 649, 925 P.2d 1359, 1366 (App. 1996) (some statutory referendum requirements are not strictly construed).

**¶12** The legislature has adopted an approach to technical defects very similar to that announced in *Direct Sellers* and has directed that its statutory requirements be interpreted to enhance the right of referendum, stating its intent as follows:

7

> If there is doubt about requirements of ordinances, charters, statutes or the constitution concerning only the form and manner in which the power of an initiative or referendum should be exercised, these requirements shall be broadly construed, and the effect of a failure to comply with these requirements shall not destroy the presumption of validity of citizens' signatures, petitions or the initiated or referred measure, unless the ordinance, charter, statute or constitution expressly and explicitly makes . . . fatal [any] departure from the terms of the law.

1989 Ariz. Sess. Laws, ch. 10, § 1; *see also Sherrill v. City of Peoria*, 189 Ariz. 537, 540-41, 943 P.2d 1215, 1218-19 (1997); *Lawrence v. Jones*, 199 Ariz. 446, ¶ 7, 18 P.3d 1245, 1248 (App. 2001). We must apply this approach in analyzing the statutes and petitions in this case.

¶13 As pertinent here, article IV, pt. 1, § 1(9) of the Arizona Constitution provides, in part, that "[e]ach sheet containing petitioners' signatures shall be attached to a full and correct copy of the title and text of the measure so proposed to be initiated or referred to the people." Section 19-112(B), A.R.S., restates this requirement, *Sherrill*, 189 Ariz. at 538, 943 P.2d at 1216, and § 19-112(C) imposes a requirement that the affidavit of the circulator state that the measure, in this case, the ordinance, was attached to the signature sheets "at all times during circulation."[2] Section 19-121(A)(3), A.R.S., then requires that the signature sheets be attached to the ordinance when filed. Finally, A.R.S. § 19-121.01(A)(1)(a)

---

[2]The statutory requirements for statewide referenda are imposed on the town by article IV, pt. 1, § 1(2) and (8) of the Arizona Constitution and A.R.S. § 19-141(C). *See Sedona Private Prop. Owners Ass'n v. City of Sedona*, 192 Ariz. 126, ¶ 8, 961 P.2d 1074, 1075 (App. 1998).

requires the clerk to remove any sheets not attached to a copy of the ordinance. The purpose of attaching the ordinance to the signature sheets is so each potential petitioner has access to the measure under consideration. *Cottonwood Dev.*, 134 Ariz. at 49, 653 P.2d at 697.

¶14 SOVOG indisputably complied with the constitutional provision that the ordinance be attached to the signature sheets and with the statutory restatement of that requirement that the ordinance be attached "at all times during circulation." § 19-112(C). But it failed to strictly comply with an express statutory requirement when it filed its petition without the copies of the ordinance attached to each signature page. *See* § 19-121(A)(3) and § 19-121.01(A)(1)(a). Nevertheless, neither of the statutes containing this requirement "expressly and explicitly makes . . . fatal [any] departure from the terms of the law." 1989 Ariz. Sess. Laws, ch. 10, § 1. And, as in *Direct Sellers*, this requirement is valid only to the extent it does not unreasonably hinder and reasonably supplements the constitutional purpose.

¶15 Based on the above analysis, SOVOG's technical failure to comply with the statute's filing requirement did not compel the trial court to declare the signatures void. Rather, the court was entitled to determine that SOVOG had successfully restored the presumption that the signatures had been collected in the constitutionally required manner and were valid. Under the specific circumstances of this case, in which Forszt and Vestar have not disputed that the ordinance was attached to the petitions when they were circulated

for signature, we conclude the trial court did not err when it found the presumption of the signatures' validity had been restored.

¶16 Forszt and Vestar argue that the mere *circulation* of the petition with the ordinance attached did not suffice to restore the presumption of validity because SOVOG violated the statute by failing to *file* the petition with the ordinance attached—not by failing to circulate it properly. And they maintain that compliance with one statutory provision cannot remedy a failure to comply with a separate provision. *See W. Devcor*, 168 Ariz. at 432, 814 P.2d at 773 (compliance with requirement that recorder verify random sample of signatures does not cure failure to abide by separate constitutional obligation that circulators verify that every signature is by qualified elector of relevant constituency). In this vein, they emphasize correctly that the legislature saw fit to require both the circulation and filing of the signature sheets with the ordinance attached. *See* § 19-112(B) (requiring signature sheets to "be attached at all times during circulation to a full and correct copy of the . . . measure"); § 19-121(A)(3) (requiring that signature sheets be filed with a copy of the measure attached).

¶17 But, unlike the situation addressed in *Western Devcor*, in which the court emphasized that both relevant requirements played a substantial, independent role in assuring the validity of the signatures submitted, 168 Ariz. at 432, 814 P.2d at 773, we can conceive of no independent purpose for the requirement that signatures be *filed* with the ordinance attached other than to confirm that they have been so *circulated*. Indeed, our supreme court has apparently drawn the same conclusion, stating that the filing requirement

10

in § 19-121(A)(3) exists to confirm "that prospective signatories [had] immediate access to the exact wording of the public action which is to be suspended." *Cottonwood Dev.*, 134 Ariz. at 49, 653 P.2d at 697. Notably, § 19-121.01(A)(1)(b) requires the clerk to detach any copies of the ordinance from the signature sheets immediately upon confirming that they were submitted attached—a provision that suggests the legislature lacked any additional purpose for requiring that the ordinance be attached when the petition is filed.

¶18 Moreover, the courts and the legislature have specifically directed us to evaluate procedural oversights like the one here, and any effort to overcome them, in the context of "the presumption of validity." 1998 Ariz. Sess. Laws, ch. 10, § 1; *Sherrill*, 189 Ariz. at 540, 943 P.2d at 1218; *Lawrence*, 199 Ariz. 446, ¶ 7, 18 P.3d at 1248. That presumption refers to the validity of the signatures on the petition, not to the propriety of the petition's form when filed. *W. Devcor*, 168 Ariz. at 431, 814 P.2d at 772 (interpreting *Direct Sellers* as holding that "the defect in the circulator's affidavit . . . only destroyed the presumption of validity of the *signatures*") (emphasis added); *Direct Sellers*, 109 Ariz. at 5, 503 P.2d at 953 (omission in circulator's affidavit merely destroyed presumption of validity of "*signatures* appearing on the petitions") (emphasis added). And the filing requirement is only valid when it reasonably supplements the constitutional purpose of giving potential petitioners access to the measure under consideration. *Direct Sellers; Cottonwood Dev.* Accordingly, although the trial court's inquiry was triggered by SOVOG's failure to file the petition without the ordinance attached, the trial court did not err when it focused on the form of the petition *when circulated to the signatories* in evaluating

11

whether the presumption had been restored. Only the latter event would be relevant to the underlying validity of the signatures obtained.

¶19        Our conclusion is reinforced by the supreme court's own analysis in *Direct Sellers*. There, the proponents of the referendum had omitted from the circulator's affidavit an avowal that the circulator was a qualified elector. 109 Ariz. at 4, 503 P.2d at 952. Nonetheless, the court did not require the proponents to recirculate the petitions with corrected affidavits in order to restore the presumption. Rather, it held the signatures could again be presumed valid "on proof that the circulators were in fact qualified electors." *Id.* at 4, 503 P.2d at 952. Here, in determining whether the presumption was restored, we similarly focus on whether the underlying event relevant to assuring the validity of the signatures occurred—whether the signatories had the correct copy of the ordinance before them when they signed the petition for referendum.

¶20        Forszt and Vestar argue that allowing the above remedy for the filing defect here would have the effect of "reading out of existence" a statutory requirement that the legislature saw fit to impose, an event *Western Devcor* requires us to avoid. 168 Ariz. at 432, 814 P.2d at 773. But the statute does not "expressly and explicitly" render the petitions void if they are not filed with the ordinance attached. And under our analysis, and that conducted by the trial court, SOVOG's violation of § 19-121(A)(3) effectively rendered the signatures invalid in the absence of an additional showing that they had been properly collected in the first instance. In contrast, had a copy of the ordinance been attached to the signature sheets, the signatures would have been presumed valid and the burden of

12

persuasion would have been on the referendum's opponents. *See, e.g., McDowell Mountain Ranch Land Coal. v. Vizcaino*, 190 Ariz. 1, 3-4, 945 P.2d 312, 314-15 (1997) (analyzing sufficiency of evidence to overcome presumption). Thus, far from giving the requirement of proper filing no effect, we have concluded that the failure to strictly comply with that provision imposed a substantial evidentiary burden on the proponents of the referendum.

¶21 Forszt and Vestar assert that, even if SOVOG could restore the presumption of validity by demonstrating that the petitions had been properly circulated with the measure attached, they needed to do so within the initial thirty-day deadline for filing a petition for referendum. Our supreme court has held that the proponents of a referendum cannot obstruct the passage of legislation by amending a defective petition outside the deadline for its filing. *Direct Sellers*, 109 Ariz. at 5, 503 P.2d at 953. The court observed:

> To hold otherwise would allow a small minority of voters to present a protest to the passage of a law[,] . . . have the protest found insufficient, file amendments, have those found insufficient, and in this obstructive manner prevent a law from going into effect for any number of years after its enactment.

*Id*. at 6, 503 P.2d at 954. And the court noted that the legislature had specifically passed the affidavit requirement of § 19-112 in response to such "'fraudulent and corrupt practices in connection with the circulation of petitions.'" *Id., quoting* 1953 Ariz. Sess. Laws, ch. 82, § 1.

13

¶22    But the trial court's ruling here was not based on any conclusion that SOVOG had amended its referendum petition or otherwise "cured" the defect.[3] Rather, the court found that SOVOG had restored the presumption of validity of the signatures by presenting independent proof of proper compliance with the underlying requirements. And, although the supreme court has not clarified whether independent proof must also be presented within the deadline for filing the referendum petition,[4] the trial court ultimately concluded that the presumption had been restored based on material that had been submitted within the

[3]SOVOG has argued alternatively that it attempted to cure the defect within the effective deadline for filing the petition after the conclusion of *SOVOG I*. Given our conclusion that SOVOG timely restored the presumption of validity, we do not address that complex issue.

[4]In *De Szendeffy v. Threadgill*, 178 Ariz. 464, 466, 874 P.2d 1021, 1023 (App. 1994), Division One of this court interpreted *Direct Sellers Ass'n v. McBrayer*, 109 Ariz. 3, 503 P.2d 931 (1972), to require that independent proof offered to restore the presumption must be offered within the deadline for filing the referendum petition. But we read *Direct Sellers* as drawing a clear distinction between (1) proof to restore the presumption of validity notwithstanding a defect and (2) amending a petition to eliminate its defect. On the facts before it, the supreme court suggested that the former would involve "proof that the circulators were in fact qualified electors" while the latter would involve "amend[ing] their petitions to comply with the verification provision," a wholly different undertaking that would require each circulator to sign and submit new differently worded affidavits. 109 Ariz. at 4, 5, 503 P.2d at 952, 953. We also read *Direct Sellers* as requiring that the latter action occur within the deadline but leaving the timeliness question for the former process intentionally unaddressed. In fact, *Direct Sellers*'s basis for rejecting late amendments to a petition—that, once the deadline has run, "the power to petition . . . has lapsed"—would not necessarily apply to a trial court's determination that a timely but defective petition ultimately contains enough presumptively valid signatures to require an election. *Id*. at 6, 503 P.2d at 954. More recently, the court stated, albeit in dictum, that the referendum proponents could have cured the defect with independent proof, but noted the record contained no such proof. *W. Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 431, 814 P.2d 767, 772 (1991). The court did not suggest or otherwise indicate that such proof would be limited to that submitted before the filing deadline. *Id.*

14

deadline: affidavits printed on each signature sheet in which each circulator had avowed that the correct measure had been attached when circulated. Indeed, as noted earlier, Forszt and Vestar have not disputed that the ordinance was properly circulated with the petition and that the circulation occurred before the deadline. And SOVOG submitted a valid petition within the time limits. Any delay has been occasioned by the town clerk's refusal to accept the petition and Forszt's and Vestar's institution of this litigation.

**CONCLUSION**

¶23        Because SOVOG had successfully restored the presumption of validity, the trial court did not err when it found that the signature sheets submitted to the Pima County recorder for verification were not invalid. Accordingly, we affirm the trial court's grant of summary judgment in favor of SOVOG and the Pima County recorder.

_____
JOSEPH W. HOWARD, Presiding Judge


CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge


_____
PETER J. ECKERSTROM, Judge


15