NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MARLA C. JORDAN, as Personal
Representative of the Estate of
Barbara Mary Middleton, Deceased,
*Petitioner/Plaintiff/Appellee*,

*v.*

JAMES L. HUBBARD, individually
and as Trustee/Successor Trustee
of the Roddick Family Trust -
with Respect to the Separate
Property of N. Grace Roddick,
*Respondent/Defendant/Appellant*.

RICHARD E. DURFEE, JR., as Trust
Protector of the Roddick Family
Trust – with Respect to the Separate
Property of N. Grace Roddick,
*Proposed Intervenor/Appellant*.

No. 1 CA-CV 16-0060
1 CA-CV 16-0474
(Consolidated)
FILED 5-4-2017

Appeal from the Superior Court in Yavapai County
No.  P1300CV20090915
The Honorable Patricia A. Trebesch, Judge

**AFFIRMED**

COUNSEL

Murphy, Schmitt, Hathaway & Wilson, PLLC, Prescott
By Dan A. Wilson, Michael R. Murphy
*Counsel for Petitioner/Plaintiff/Appellee*

Davis, Miles, McGuire, Gardner, PLLC, Tempe
By Bradley D. Weech
*Counsel for Respondent/Defendant/Appellant*

Davis, Miles, McGuire, Gardner, PLLC, Tempe
By Scott F. Gibson
*Counsel for Proposed Intervenor/Appellant*

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Margaret H. Downie and Judge James P. Beene joined.

**J O H N S E N**, Judge:

**¶1**       These appeals arise from a bitterly contested dispute over a distribution from a trust.  We affirm the superior court's orders confirming an arbitrator's award and its denials of a host of motions seeking to undermine that award.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**       N. Grace Roddick ("Grace"), creator and Trustor of the Roddick Family Trust ("Trust"), passed away on August 26, 2007, leaving her brother James L. Hubbard as Trustee and attorney Richard Durfee, Jr., as the designated Trust Protector.[1]   The Trust established a special beneficiary trust and identified Barbara Middleton ("Barbara") as a beneficiary.  In relevant part, the Trust provided that on Grace's death:

> 2.1    Trustee shall distribute free and clear of the Trust the sum of $200,000 from Grace's separate property to or for the benefit of Grace's hairdresser, BARBARA MIDDLETON, of

---

[1]      Durfee's law firm created the Trust in January 2001.

2

Prescott, Arizona, if she is then living at the time of the distribution. If Barbara is not then living, this gift shall lapse.

\*  \*  \*

2.3    Trustee shall allocate the entire balance of Grace's separate property held by the Trust or otherwise to or for the benefit of Grace's brother, JAMES L. HUBBARD, to be administered pursuant to the terms and provisions of the Primary Beneficiary Trust.

Barbara survived Grace for seven months, passing away in April 2008. She did not receive the $200,000 distribution before she passed.

**¶3**        In October 2008, the Personal Representative for Barbara's estate wrote to Hubbard's lawyers, including Durfee, arguing the $200,000 distribution had vested before Barbara died, and offering to forego any claim for attorney's fees and interest if Hubbard would make the $200,000 distribution within 30 days. In March 2009, Durfee responded on behalf of Hubbard and denied that Barbara's estate had any "enforceable interest of any kind or nature in or to the Trust." Durfee cited section 11.7 of the Trust, titled "Source of Interpretation," which stated that if "there be any serious question in the interpretation of any provision of this Trust, then an interpretation given in writing by the Advisor that prepared this Trust as set forth on the cover page of this document shall be binding." Durfee asserted that his rejection of the demand by Barbara's estate "constitute[d] such a binding interpretation of the Trust," and warned that Barbara's estate would be liable for sanctions pursuant to Arizona Rule of Civil Procedure 11 and attorney's fees under the Trust if it pursued a claim for the distribution.

**¶4**        In June 2009, Barbara's estate sued Hubbard, individually and as trustee, seeking distribution of the $200,000 and alleging breach of trust and breach of fiduciary duty. Hubbard moved to enforce the Trust's alternative dispute resolution procedures, including arbitration. The court granted Hubbard's motion, ordering the dispute to private arbitration. Pursuant to the Trust and a separate "Integrity Agreement," which the Trust incorporated by reference, Barbara's estate and Hubbard selected attorney Mark Lassiter – who was recommended by Hubbard's attorney – as the arbitrator.

**¶5**        Hubbard's attorney, with the assistance of Lassiter and Barbara's estate, drafted an addendum to the Integrity Agreement ("Addendum"), which both parties and their lawyers then signed. The

stated purpose of the Addendum was "to facilitate the resolution of dispute(s) between the Parties and application of the terms of [the Trust and its Integrity Agreement] in light of the claim against the Trust raised by and subsequent civil lawsuit filed by [Barbara's estate] against [Hubbard]," and "the events surrounding the lawsuit." The Trust specified that "any decision rendered" by an arbitrator in accordance with the Integrity Agreement "shall be binding upon the parties as if the decision had been rendered by a court having proper jurisdiction." Likewise, the Addendum provided that the arbitrator's determination would be "final and legally binding" and "may become and have the same effect as the judgment of a civil court."

¶6 On cross-motions for summary judgment, Lassiter issued a detailed Notice of Decision on November 9, 2014, ruling that Barbara's right to receive the $200,000 distribution had vested before her death. Lassiter ordered the Trust to distribute the award, plus interest and reasonable costs and attorney's fees, to Barbara's estate. In the Notice of Decision, Lassiter pointed out that to the extent the distribution to Barbara's estate failed, Hubbard would "pocket the money" because he as beneficiary was entitled to receive whatever remained after any distributions to Barbara and one other special beneficiary. Still to be resolved after the Notice of Decision was the amount of interest due, the attorney's fees award and how the distribution to Barbara's estate would be made.

¶7 Before any further proceedings took place in the continuing Lassiter arbitration, however, on January 12, 2015, Durfee wrote to Lassiter asserting a "Notice of Dispute" under the Integrity Agreement. Durfee's letter explained that he was writing "on my own initiative in my capacity as Trust Protector" of the Trust. Durfee asserted that Lassiter's Notice of Decision "ignores" and "affirmatively repudiates and violates" the intent of the Trust. Durfee attached a document titled "Modification by Protector," dated January 1, 2015, by which he purported to modify the Trust to void Lassiter's decision. In relevant part, the Modification stated:

a. Paragraph 2.1 of the Schedule of Special Beneficiaries is deleted in its entirety effective as of August 26, 2007.

b. Barbara Middleton did not at any time and does not now have any vested right to a distribution from the Trust or any power to compel a distribution from the Trust.

c. The estate of Barbara Middleton is not now and has never been a beneficiary of the Trust. The estate of Barbara Middleton is expressly excluded as a beneficiary of the Trust.

The estate of Barbara Middleton is not now and has never been a party to the Trust, and does not have and has never had any rights with respect to the Trust. Trustee is prohibited from making any distribution to the estate of Barbara Middleton.

d. The document captioned "Private Arbitrator Mark Lassiter's Notice of Decision on the Parties' Cross-Motions for Summary Judgement" dated November 9, 2014 and any subsequent rulings or proceedings by Arbitrator Mark Lassiter with respect thereto, are deleted and stricken in their entirety.

¶8 Durfee also demanded that Lassiter issue a new award striking his November 9 decision; Durfee demanded that if Lassiter refused to do so, he "must resign and withdraw as arbitrator or be removed." Durfee added that if Lassiter refused to strike his decision or resign, Durfee would nominate another arbitrator to address matters raised by the Modification. Durfee repeated his demands in a letter dated January 28, 2015, titled "Follow Through on Notice of Dispute," and a letter dated January 30, 2015, titled "Notice of Default & Termination of Appointment," which purported to terminate Lassiter's appointment and halt the arbitration proceedings.

¶9 Lassiter did not change his decision, nor resign as arbitrator, but set a hearing for February 6, 2015, to take evidence on the issues remaining in the arbitration. Before that hearing, however, Hubbard submitted several motions to Lassiter asking him to comply with Durfee's demands. Lassiter refused, and the hearing proceeded.

¶10 In Lassiter's 20-page final award ("Lassiter Award"), issued on February 16, the arbitrator made a finding of fact, based in substantial part on Hubbard's testimony, that Grace's intent was that the $200,000 distribution was to be made to Barbara, and "*on the law and facts of this particular case*, [Grace] would have, and did, expect and intend the same to have been made even if the same ended up in the Estate of Barbara Mary Middleton." Lassiter found that at all times, Barbara's estate had acted in good faith but that, by contrast:

Defendant James Hubbard so manipulated and controlled the affairs of Grace's Trust as to assure that no intended $200,000 distribution was made to the late Barbara Middleton during her lifetime. He did this so that he could use his failure as

Trustee to make a distribution to Barbara Middleton during her life so that he himself receive these funds – all in frustration of the purposes and intent of the late Grace Roddick.

Lassiter further found Durfee's purported Modification was "null, void and unenforceable" against Barbara's estate and that "it has no legal effect whatsoever on [Barbara's estate], this arbitration proceeding . . . or this award." He further concluded that in purporting to modify the Trust and in demanding that Lassiter change his ruling or resign:

[Durfee] was acting at the direction and instruction of, and solely for the benefit of, his actual or former client Defendant James Hubbard (and not for the benefit of the Trust) to further Defendant Hubbard's attempts to abuse the process of or terminate the arbitration proceeding and to hinder, delay and prevent the Plaintiff from receiving any final, just adjudication of her claims, now being prosecuted into their *sixth year*.

At length and in detail, Lassiter's Final Award rejected Durfee's attempt to void the arbitration proceedings, concluding that "[t]he Arbitrator, and not Mr. Durfee (in his capacity as 'Trust Protector' or otherwise), has the sole and exclusive power in the parties' arbitration proceeding to decide the disputed issues of law and fact presented by the parties herein for a determination." As for Durfee's specific demand that Lassiter resign in place of another arbitrator, Lassiter found:

The claims of the (non-party) Trust Protector [Mr. Durfee] and Defendant James Hubbard that any time any arbitrator disagrees with their self-affirming legal position requires any such arbitrator to submit any decision contrary to their will to "Mediation or Arbitration" could potentially subject the parties' dispute here to a perpetual, never ending [series] of repeated demands for "further mediation and arbitration" of potentially contrary decisions, all of which would deprive the Plaintiff to a just and speedy resolution of her claims, now in their *sixth year*.

Finally, Lassiter concluded Barbara's estate was entitled to the $200,000 distribution, interest and costs in an award totaling $334,065.60.

¶11 On February 19, 2015, Barbara's estate filed a motion in superior court for confirmation of the award and entry of judgment.

6

¶12	Meanwhile, on February 26, 2015, Durfee and Hubbard commenced a new arbitration proceeding by serving a "Notice of Appointment of Arbitrator" of another arbitrator, Les Raatz. At the ensuing arbitration proceeding, in which Barbara's estate refused to participate, Durfee and Hubbard asked Raatz to uphold Durfee's purported "binding interpretation" of the Trust and rule that Barbara's estate was not a beneficiary under the Trust.

¶13	While the second arbitration proceeded, Hubbard asked the superior court to stay any ruling on Barbara's estate's motion to confirm the Lassiter award, and, on May 18, 2015, Hubbard also filed a motion to vacate that award. In his motion to vacate, Hubbard argued that Durfee's March 2009 "binding interpretation" rejecting Barbara's estate's claim was controlling. He asserted that Lassiter intentionally ignored the binding authority of the Trust Protector and further criticized Lassiter for ignoring "the position of the Trustee, Advisor and Trust Protector" and asserted Lassiter "totally rejected the role and authority of an Advisor and Trust protector."

¶14	In June 2015, Raatz, the arbitrator selected by Durfee and Hubbard, decided in favor of Hubbard. After Raatz issued his final award, granting Hubbard costs and fees totaling $298,264.37, on August 18, 2015, Hubbard filed a motion in the pending superior court case to confirm Raatz's award.

¶15	In a brief order in late August, the superior court confirmed the Lassiter Award and denied Hubbard's motion to vacate that award. Before entry of final judgment, in September, Durfee filed a motion to intervene, along with a motion to confirm the Raatz award and to vacate the Lassiter Award. The superior court entered judgment confirming the Lassiter Award on December 14, 2015, and in March 2016, issued an order pursuant to Arizona Rule of Civil Procedure 54(b) addressing Durfee's motions:

> [Durfee's] "Motion to Intervene" is moot and denied, and no further action by the Court will be taken or allowed in respect to the "Motion to Intervene" and "Intervenor's Motion to Confirm Arbitration Award Issued by Les Raatz and Motion to Vacate Arbitration Award issued by Mark E. Lassiter."

Hubbard timely appealed the judgment confirming the Lassiter Award, and Durfee timely appealed the order denying his motion to intervene, motion to vacate and motion to confirm. We have jurisdiction over the two

7

consolidated appeals pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-2101(A)(1) (2017) and -2101.01(A)(6) (2017).[2]

## DISCUSSION

### A. Confirmation of Lassiter Award.

¶16        Under Arizona law, A.R.S. §§ 12-3001 to -3029 (2017), judicial review of an arbitrator's award is substantially limited. *RS Indus., Inc. v. Candrian*, 240 Ariz. 132, 135, ¶ 7 (App. 2016). An arbitrator's decisions regarding questions of law and fact are final and will not be disturbed unless the arbitrator decided a matter beyond the scope of the arbitration. *Smitty's Super-Valu, Inc. v. Pasqualetti*, 22 Ariz. App. 178, 180-81 (App. 1974) ("[E]ven though a court reviewing an arbitration award might consider erroneous some rulings on questions of law, the rulings made by the arbitrators are binding unless they result in extending the arbitration beyond the scope of the submission."). As relevant here, an aggrieved party may petition the superior court to vacate an arbitration award if the "arbitrator exceeded the arbitrator's powers," A.R.S. § 12-3023(A)(4), or if there was "[e]vident partiality by an arbitrator appointed as a neutral arbitrator," A.R.S. § 12-3023(A)(2)(a). We review the superior court's decision to confirm an arbitration award in the light most favorable to upholding the decision and will affirm unless the superior court abused its discretion. *Candrian*, 240 Ariz. at 135, ¶ 7.

#### 1. The arbitrator's powers.

¶17        Hubbard argues the superior court abused its discretion in confirming the Lassiter Award because Lassiter exceeded his power by ruling in "manifest disregard" of the Trust and Arizona law. An arbitrator's powers are defined by the agreement between the parties. *Pasqualetti*, 22 Ariz. App. at 180.

¶18        There can be no dispute that Hubbard, as Trustee, agreed to grant Lassiter the power to arbitrate the claim by Barbara's estate. After Barbara's estate filed its complaint seeking the distribution, it was Hubbard who moved to compel arbitration of the claim.[3] In that motion, he

---

[2]        Absent material revision after the relevant date, we cite a statute's current version.

[3]        Hubbard moved to compel arbitration after Durfee issued his "binding interpretation," but before Durfee purported to modify the Trust.

maintained that he had "unequivocally demanded" alternative dispute resolution from the beginning of the dispute and argued that Arizona public policy "favors arbitration and requires that arbitration clauses are to be liberally construed," adding that "any doubts about whether a matter is subject to arbitration are resolved in favor of arbitration." To that end, the Addendum that Hubbard and Barbara's estate negotiated stated:

> The purpose of this Addendum is to facilitate the resolution of dispute(s) between the Parties and the application of the terms of those documents in light of the claim against the Trust raised by and subsequent civil lawsuit filed by Marla C. Jordan, as Personal Representative of the Estate of Barbara Mary Middleton, deceased, against James L. Hubbard, individually and as Trustee/Successor Trustee of the Roddick Family Trust[.]

¶19 Although Hubbard contends Lassiter exceeded his powers, his argument really is just that Lassiter wrongly decided Barbara's estate's claim. Hubbard argues Lassiter's award demonstrated "manifest disregard for that law," and he argues Lassiter incorrectly interpreted the Trust and ignored Grace's intent and the Modification issued by Durfee. He further argues that Lassiter ignored Arizona law regarding trust protectors. These are arguments why Lassiter's decision was incorrect, not arguments why Lassiter may have exceeded his authority in deciding the issues presented.

¶20 Hubbard also argues Lassiter exceeded the scope of his power by making "voluminous findings on issues outside the arbitration regarding Mr. Durfee and his role as Trust Protector." *See supra* ¶ 10. But, setting aside Durfee's attempts to interject himself into the arbitration as Trust Protector, Hubbard himself placed the issue of Durfee's powers before Lassiter when he made filings urging Lassiter to accede to Durfee's demands and actions as Trust Protector. *See supra* ¶ 9.

### 2. Alleged evident partiality.

¶21 On appeal, Hubbard argues that Lassiter "wrote his apparent bias into the award itself," citing findings Lassiter made that were critical of Hubbard and Durfee as Trust Protector. Courts determine "evident partiality" exists on a case-by-case basis. *Wages v. Smith Barney Harris Upham & Co.*, 188 Ariz. 525, 531 (App. 1997) (various federal and state courts have struggled with the concept, and relevant statutes do not provide a definition). A party challenging confirmation of an arbitration award has

the burden of proving the existence of grounds to vacate the award. *Wages*, 188 Ariz. at 530.

**¶22** Hubbard cites Lassiter's findings, recounted above, about Durfee's conduct as Trust Protector to support his argument that Lassiter "abandoned his role as a neutral arbitrator." The superior court, however, rejected that argument. The court concluded that Durfee's attacks on Lassiter's authority "were not proper as initiated," and "gave a definite appearance of undermining the integrity of the dispute resolution process and diminishing the authority of Arbitrator Lassiter." The court found Lassiter's ruling was not "scathing or excoriating; it was direct, it was clear and it expressed significant concerns." As such, the court concluded, Lassiter's "ruling is not competent evidence of partiality." Finally, the court addressed Hubbard's contention that Lassiter demonstrated bias by rejecting Durfee's asserted Modification and related demands:

> Arbitrator Lassiter had an independent duty to adjudicate the matter and he had to remain free from influence of outside sources, including nonparties. The record[] supports that the Arbitrator conducted himself accordingly[.]
>
> 15. Arbitration was contemplated in this case by the Trust as a preferred means of resolving this dispute. The Court found those provisions enforceable, the parties were directed to Arbitration, and both sides agreed to undergo Arbitration . . . .
>
> 16. Deference to any interpretation by the Trust Protector regarding the provisions of the Trust is no longer feasible after the binding ruling of Arbitrator Lassiter, particularly given the passage of time, and given the current posture of this case post-Lassiter Arbitration. To invoke the authority of the Trust Protector in the midst of the Arbitration proceeding was not only untimely but an apparent effort to usurp the authority vested in Arbitrator Lassiter by the prior agreement from both sides[.]

**¶23** The court plainly did not abuse its discretion in rejecting Hubbard's assertion that Lassiter's award displayed "evident partiality."

**B.     Motion to Intervene.**

**¶24** Durfee moved to intervene in the superior court matter as a matter of right pursuant to Arizona Rule of Civil Procedure 24(a), or, in the

alternative, as a matter of permissive intervention pursuant to Rule 24(b). We may affirm the superior court's ruling if it is correct for any reason apparent in the record. *Forszt v. Rodriguez*, 212 Ariz. 263, 265, ¶ 9 (App. 2006). Although the court denied Durfee's motion to intervene on the grounds of mootness, as explained below, the motion failed for multiple other reasons.

### 1.     Intervention of right.

**¶25**         We review *de novo* whether an applicant may intervene as a matter of right. *Dowling v. Stapley*, 221 Ariz. 251, 269-70, ¶ 57 (App. 2009). Rule 24(a) provides that, on timely motion, the court must allow intervention to one who:

> (1) has an unconditional right to intervene under a statute; or
> (2) claims an interest relating to the subject of the action, and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect that interest, unless existing parties adequately represent that interest.

*See Woodbridge Structured Funding, LLC v. Ariz. Lottery*, 235 Ariz. 25, 28, ¶ 13 (App. 2014).[4]

**¶26**         The timeliness of a motion to intervene is determined based on "the stage to which the lawsuit has progressed when intervention is sought," "whether the applicant could have attempted to intervene earlier," and most importantly, "whether the delay in moving for intervention will prejudice the existing parties in the case." *State ex rel. Napolitano v. Brown & Williamson Tobacco Corp.*, 196 Ariz. 382, 384, ¶ 5 (2000).

**¶27**         Durfee's first and only attempt to intervene came extremely late in the litigation; our record makes plain that he knew of the dispute since 2008, and knew of the lawsuit since it was commenced in 2009. The case progressed through the superior court and arbitration proceedings for more than six years before Durfee sought to intervene in September 2015. In the meantime, there had been nearly two years of pre-award proceedings in the Lassiter arbitration, the issuance of the final Lassiter Award, the filing of the motion to confirm the Lassiter Award, and finally, the hearing the

---

[4]     Durfee does not identify a statute conferring an unconditional right to intervene pursuant to Rule 24(a)(1); therefore, we address only a right to intervene under Rule 24(a)(2).

superior court held on the motion to confirm the Lassiter Award in August 2015 – which Durfee himself attended. Durfee could have attempted to intervene at any of these stages, but did not do so.

**¶28** Despite the delay, Durfee argues his intervention will not prejudice Barbara's estate because "no matter how the Court rules on the substantive issues of this appeal, the case will come to a close." This contention disregards the additional legal expense and delay that his intervention caused and would have caused in the superior court. In short, Durfee's motion to intervene was untimely; no reasonable superior court judge could have decided otherwise.

**¶29** With regard to the interests to be protected in the action, Durfee asserts his interest was "to see that [Grace's] intent is being followed in the administration of the Trust." We do not find convincing Durfee's contention that that interest was impaired by the arbitrator's determination of the claim by Barbara's estate in his absence, or that Durfee's interest in protecting Grace's intent was not well-represented in the arbitration. The interests at issue in the arbitration were those of Hubbard and those of Barbara's estate, and those competing interests were to be determined, and were determined, by Lassiter according to what he discerned to be Grace's intent.[5] Durfee's contention that, under the facts presented, Grace would have intended her distribution to Barbara to lapse, and the $200,000 to go to Hubbard instead, was litigated vigorously (although to no avail) by Hubbard during the arbitration and before the superior court in the confirmation process.

**¶30** On appeal, Durfee concedes that his interests and Hubbard's were aligned in the superior court action. Further, in Durfee's motion to intervene, he sought to justify his delay by explaining that as long as Hubbard, as Trustee, was acting on behalf of the Trust in the litigation, Durfee "had no cause to seek to intervene." As these statements make plain, Durfee can offer no cogent reason why his purported interests in protecting

---

[5] As for any interest of Durfee in carrying out his role as Trust Protector, Hubbard litigated that issue during the arbitration and before the superior court. In February 2015, before Lassiter issued his final award, Hubbard submitted to Lassiter a "Motion that the Arbitrator Abide by the Trust Protector Decision and Directives." In addition, in his motion to vacate the arbitration award filed in the superior court action, Hubbard argued for Durfee's authority as Trust Protector.

Grace's intent were not adequately represented in the litigation and the Lassiter arbitration.[6]

### 2. Permissive intervention.

**¶31** Rule 24(b) provides that, on timely motion, the court may permit intervention by one who "has a conditional right to intervene under a statute" or who "has a claim or defense that shares with the main action a common question of law or fact." Ariz. R. Civ. P. 24(b)(1).

**¶32** A motion for permissive intervention must be filed timely. *Weaver v. Synthes, Ltd. (U.S.A.)*, 162 Ariz. 442, 446 (App. 1989). In ruling on a motion for permissive intervention, the court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Ariz. R. Civ. P. 24(b)(3). Also relevant are "a number of factors such as the nature and extent of the intervenor's interest, his or her standing to raise relevant issues, legal positions the proposed intervenor seeks to raise, and those positions' probable relation to the merits of the case." *Dowling*, 221 Ariz. at 272, ¶ 68.[7] We review orders denying permissive intervention under Rule 24(b) for an abuse of discretion. *Dowling*, 221 Ariz. at 270, ¶ 57.

**¶33** As stated above, the superior court would have been justified on grounds of timeliness alone in denying Durfee's motion to intervene as a matter of right. Denial of the motion for permissive intervention likewise was justified by delay and the prejudice that intervention would have caused to Barbara's estate, and in light of Durfee's minimal interests in the action. The superior court did not err, therefore, in denying Durfee's motion to intervene under Rule 24(b).

---

[6] It is also worth noting that Grace's intent, as Grantor of the Trust, was that parties to any dispute under the Trust would use alternative dispute resolution, up to and including arbitration, pursuant to the Integrity Agreement. It was her intent that "once a discomfort has developed" between parties, no party may "substantially disturb *status quo*" until the outcome of the Integrity Agreement process was final. Durfee's effort to modify the Trust after Lassiter issued his notice of decision disregarded that intent.

[7] Durfee does not identify a statute conferring a conditional right to intervene pursuant to Rule 24(b)(1)(A); therefore, we address only permissive intervention under Rule 24(b)(1)(B).

**CONCLUSION**

**¶34** For the foregoing reasons, we affirm the superior court's confirmation of the Lassiter Award and its denial of Durfee's motions to intervene, to vacate the Lassiter Award and to confirm the Raatz award. We grant Barbara's estate its costs and, pursuant to A.R.S. § 12-3025(C) (2017), its reasonable attorney's fees on appeal, contingent on compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA