NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SHEENA W., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, B.W., *Appellees.*

No. 1 CA-JV 21-0347
FILED 8-17-2023

Appeal from the Superior Court in Maricopa County
No. JD27321
JS20790
The Honorable David O. Cunanan, Judge, *Retired*

**AFFIRMED**

COUNSEL

John L. Popilek P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

---

**F U R U Y A**, Judge:

¶1        On remand from our Supreme Court, we revisit Sheena W.'s ("Mother") appeal from the juvenile court's order terminating her parental rights to her child ("B.W."). For the following reasons, we again affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        Not including this case, the juvenile court has twice adjudicated B.W. dependent as to Mother due to abuse and neglect over the past eight years. DCS first removed B.W. from Mother's care in 2013 and provided reunification services, including substance-abuse testing and treatment, a psychological evaluation, counseling, parent-aide services, and parenting classes. Mother completed services and the juvenile court returned B.W. to her care in early 2016.

¶3        DCS again removed B.W. in May 2016 after Mother hit B.W. with a belt, resulting in injuries. Mother received services again, including supervised visitation, multiple parent aides, urinalysis testing, family therapy, and a psychological evaluation. B.W. also received services, including behavioral coaching and counseling. Mother completed reunification services and B.W. was again returned to her care in September 2019. Despite successful completion of some services, however, Mother physically abused B.W. again less than 18 months later.

¶4        DCS removed B.W. from Mother's care for the third time in February 2021 after she hit him with a metal broomstick, resulting in injuries and requiring treatment at Phoenix Children's Hospital. After this third removal, DCS simultaneously moved for dependency and termination of Mother's parental rights on willful abuse and prior removal grounds. Meanwhile, Mother pled guilty to felony child abuse in her criminal case stemming from the incident.

¶5        Over the next seven months, DCS attempted to assess Mother for reunification services, but the case manager was unable to successfully communicate with her. DCS referred Mother for some services, including a

DCS case aid and a psychological consultation, but her case manager testified she was unable to effectively communicate with Mother or "have a full, thorough conversation to be able to address any concerns, any services, et cetera" due to Mother's volatile behaviors. Despite this lack of communication, Mother self-referred for some services including domestic violence counseling and parenting classes.

¶6         After trial, the juvenile court found DCS proved both grounds for termination by clear and convincing evidence and that termination was in B.W.'s best interests. The court further found DCS made reasonable efforts to reunify Mother and B.W. Mother timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") § 8-235(A).

## DISCUSSION

¶7         This case returns to us on the Arizona Supreme Court's order vacating part of our opinion in *Sheena W. v. Dep't of Child Safety*, 254 Ariz. 296 (App. 2022), *as amended* (Jan. 26, 2023) ("*Sheena W. I*"). *Sheena W. v. DCS/B.W.*, CV-23-0003-PR, 2023 WL 2782747 at *1 (Ariz. Apr. 4, 2023) (vacating paragraphs 13–17 and 25 of *Sheena W. I*). In this order, the supreme court asks that we reconsider the applicability of A.R.S. § 8-846(D) "in light of the fact [Mother] was convicted of violating A.R.S. § 13-3623(B)(1), which is not a dangerous crime against children under A.R.S. § 13-705(T)(1)(h)." *Id.*

¶8         DCS must provide reunification services to parents when it has removed a child from the parents' home. A.R.S. § 8-846(A). There are exceptions to this requirement. *See* A.R.S. § 8-846(D). Our supreme court correctly points out that the State did not convict Mother of a dangerous crime against children. Nor does the record establish by clear and convincing evidence that B.W. suffered "serious physical injury," as defined by A.R.S. § 13-3623(F)(5), or emotional injury. Therefore, under the circumstances of this case, the exception under A.R.S. § 8-846(D)(1)(d) is not applicable and we should not have suggested otherwise in *Sheena W. I*.

¶9         Nevertheless, we conclude another exception applies. *See* A.R.S. § 8-846(D)(1)(c) (exception for prior removal of the child by DCS). And, even if no exception applies, the juvenile court did not abuse its discretion in finding DCS provided Mother with adequate reunification services.

**I.     DCS was not required to provide Mother with services under A.R.S. § 8-846(D)(1)(c)'s prior removal ground.**

¶10        The juvenile court's second basis for terminating Mother's parental rights was A.R.S. § 8-533(B)(11), the prior removal of B.W. The statute exempts DCS from providing services when a child previously removed due to physical abuse is returned to that parent and removed again due to physical abuse within 18 months. A.R.S. § 8-846(D)(1)(c).

¶11        Here, the court found DCS removed B.W. after Mother's physical abuse in May 2019, and that B.W. was returned to her care in September 2019. But within 18 months of B.W.'s return to Mother, DCS again removed him after Mother physically abused B.W. for a second time in February 2021. The record and the court's findings therefore demonstrate Mother was not entitled to services during the third and final dependency. *See* A.R.S. § 8-846(D)(1)(c).

**II.     DCS provided Mother with adequate reunification services pursuant to A.R.S. § 8-846.**

¶12        Assuming Mother was entitled to reunification services, the record supports that DCS met its obligation of reasonable and diligent efforts to provide reunification services to parent and child. A.R.S. § 8-846(A); *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 22 ¶ 47 (App. 2019).

¶13        DCS must "undertake measures with a reasonable prospect of success," but need not provide services that would be futile. *Mary Ellen C.*, 193 Ariz. 185, 192 ¶¶ 34–37 (App. 1999). Moreover, DCS need not provide "every conceivable service or . . . ensure that a parent participates in each service it offers." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235 ¶ 15 (App. 2011) (citation omitted). Nor is it required to provide duplicate services. *See In re Pima Cnty. Severance Action No. S-2397*, 161 Ariz. 574, 577 (App. 1989).

¶14        During B.W.'s first two dependencies, Mother received many services including visitation, multiple parent aides, substance-abuse testing, and therapy. Despite successful completion of some services, Mother continued to physically abuse B.W.

¶15        During B.W.'s third dependency, DCS attempted to refer Mother for additional services but was unable to successfully communicate with her, ultimately losing contact with her for several months. When DCS did reach her, Mother's own volatile behavior precluded productive conversations or assessment of Mother's needs with respect to further

reunification services. DCS was required to provide Mother only with "time and opportunity" to engage services, not to ensure her participation. *See Mary Ellen C.*, 193 Ariz. at 192 ¶¶ 34–37; *Christina G.*, 227 Ariz. at 235 ¶ 15. To the extent Mother received services through self-referral or probation, DCS did not have to duplicate those services. *See In re Pima Cnty. Severance Action No. S-2397*, 161 Ariz. at 577.

**¶16** Mother argues DCS's services were insufficient for lack of any "specialized training" related to B.W.'s Oppositional Defiance Disorder ("ODD") diagnosis. This argument fails. Shortly before trial, DCS learned B.W. had been diagnosed with ODD and he continued receiving individual therapy. The timing of B.W.'s diagnosis precluded DCS from implementing services specifically tailored to parenting a child with ODD. But throughout the prior seven years, Mother received services, including individual and family counseling, anger-management and domestic violence classes, and multiple parent aides. B.W. also received services to address his behaviors during that time. These services were designed to give Mother the tools necessary to safely and effectively parent B.W. and were tailored both to B.W.'s specific behaviors and Mother's reactions to them. And although those services were not designed specifically for ODD, the parent aide services Mother received provided family-specific goals and a curriculum modified to fit her and B.W.'s particular circumstances. Specifically, the parent aide services were geared towards providing Mother with "new skills on how to manage [B.W.'s] behavior and avoid reacting impulsively to [him]." Thus, the evidence supports the juvenile court's implicit conclusion DCS provided Mother with sufficient services, and it did not abuse its discretion in concluding DCS met the statutory grounds for termination. *See Forszt v. Rodriguez*, 212 Ariz. 263, 265 ¶ 9 (App. 2006).

**¶17** We do not readdress the juvenile court's best-interests determination, which we previously affirmed and was not vacated by our supreme court. *Sheena W. I*, 254 Ariz. at 300–01 ¶¶ 18–24.

**CONCLUSION**

**¶18** We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA